NO. PD-0407-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**CESAR ADOLFO ROCHA-MORENO, Petitioner/Appellant,**

**v.**

**THE STATE OF TEXAS, Respondent/Appellee.**

---

# PETITION FOR DISCRETIONARY REVIEW BY PETITIONER/APPELLANT

---

ON APPEAL FROM THE FIRST COURT OF APPEALS' JUDGMENT
AND OPINION IN CASE NO. 01-13-00897-CR

TRIAL COURT CAUSE NO. 1914250
IN THE COUNTY CRIMINAL COURT AT LAW NO. 1
HARRIS COUNTY, TEXAS

**John M. Bray, Esq.**
Texas Bar No. 24081360
Counsel for Petitioner/Appellant
OOSTERHOF & BRAY, PLLC
1910 Pacific Ave., Ste. 15550
Dallas, Texas 75201
Tel: (214) 550-4664
Fax: (214) 550-4654
Email: john@oblawfirm.com

***ORAL ARGUMENT REQUESTED***

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. Pro. 38.1(a), the following is a complete list of the names and addresses of all parties to the trial court's final judgment, their trial counsel, and their appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**APPELLANT**
Cesar Adolfo Rocha Moreno

**Trial Counsel & Appellate Counsel**
John M. Bray
SBN 24081360
1910 Pacific Ave., Suite 15550
Dallas, Texas 75201

**Appellate Co-Counsel**
Melissa M. Oosterhof
SBN 24079946
1910 Pacific Ave., Suite 15550
Dallas, Texas 75201

**APPELLEE**
**STATE OF TEXAS**

**Hon. Devon Anderson**
District Attorney
Harris County Criminal Justice Center
1201 Franklin Street, Suite 600
Houston, Texas 77002

**Trial Counsel**
Maritza A. Glenn
SBN 24075493
Cara E. Burton
SBN 24068399

**Appellate Counsel**
Alan K. Curry
SBN 05263700
David C. Newell
SBN 00000018

i

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Grounds for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Facts of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.      Grounds for Review Numbers One & Two . . . . . . . . . . . . . . . . . . . . . . . 3

**Ground One: The Court of Appeals erred when it affirmed the trial court's denial of Appellant's suppression motion without finding what constitutes a "high-crime area" and without remanding to determine whether Appellant was detained within a "high-crime" area.**

**Ground Two: Even if Appellant was detained in a high-crime area, his sitting in a running vehicle, without more, amounts to mere presence in a high-crime area and does not give rise to reasonable suspicion.**

    A. Summary of the Argument – First and Second Grounds for Review . . . . . 3

    B. Argument & Authorities – First and Second Grounds for Review . . . . . . 4

        1. **The Court of Appeals Erred in Applying the Standard for "Reasonable Suspicion" Instead of "Consensual Encounters"** . . . 4

2. **Even If the Area Was a High-Crime Area, Reasonable Suspicion Still Did Not Exist Because Appellant Was Merely Present in a Purportedly High-Crime Area** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3. **Because the Court of Appeals Incorrectly Concluded Reasonable Suspicion Existed, It Erroneously Concluded the Detaining Officer Had Probable Cause to Arrest Mr. Rocha** . . . . . . . . . . . . . . . . . . . 12

4. **The Correct Standard of Review Was That Governing Consensual Encounters, Because Detention Was Not Justified** . . . . . . . . . . . . . 16

C. Conclusion – First and Second Grounds for Review . . . . . . . . . . . . . . . 18

II. Ground for Review Number Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Ground Three: The Court of Appeals erroneously affirmed the trial court's denial of Appellant's request for an article 38.23 jury instruction regarding whether the area in which Appellant was detained was a high-crime area.**

A. Summary of the Argument – Third Ground for Review . . . . . . . . . . . . . . . 19

B. Argument & Authorities – Third Ground for Review . . . . . . . . . . . . . . . . 19

C. Conclusion – Third Ground for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Certificate of Compliance and Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Appendix

# INDEX OF AUTHORITIES

**Federal Cases**

*Brown v. Texas*, 443 U.S. 47 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Florida v. Bostick*, 501 U.S. 429 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Florida v. J.L.*, 529 U.S. 266 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013) . . . . . . . . . . . . . 6, 7

*Illinois v. Wardlow*, 528 U.S. 119 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10, 12

*Michigan v. Chestnut*, 486 U.S. 567 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*United States v. Mendenhall*, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Soares*, 521 F.3d 117 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Wright*, 582 F.3d 199 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 6, 10

**Texas Cases**

*Amorella v. State*, 554 S.W.2d 700 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . . . . . 11

*Atkinson v. State*, 923 S.W.2d 21 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . 20

*Cronin v. State*, 2005 Tex. App. LEXIS 10450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gurrola v. State*, 877 S.W.2d 300 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . 8

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . 8

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . 4

*Hernandez v. State*, 376 S.W.3d 863 (Tex. App.—Fort Worth 2012) . . . . . . . . . . . 17

*Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . 20

*Jordan v. State*, 394 S.W.3d 58 (Tex.App.—Houston [1st Dist.] 2012) . . . . . . 14, 15

*Klare v. State*, 76 S.W.3d 68 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) . . . 9

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . 19

*Parker v. State*, 206 S.W.3d 593 (Tex.Crim.App.2006) . . . . . . . . . . . . . . . . . . . 14, 15

*Scott v. State*, 549 S.W.2d 170 (Tex. Crim. App. 1976) . . . . . . . . . . . . . . . . . . . . . . 9

*Shaffer v. State*, 562 S.W.2d 853 (Tex. Crim. App. 1978) . . . . . . . . . . . . . . . . . . . . 8

*State v. Garcia-Cantu*, 253 S.W.3d 236 (Tex.Crim.App.2008) . . . . . . . . . . . . . . . . 17

*State v. White*, 2014 Tex. App. LEXIS 6112 (Tex.App.—Eastland, June 5, 2014) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State v. Woodard*, 341 S.W.3d 404 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . 4

*Willover v. State*, 70 S.W.3d 841 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . 4

*Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . 5

**Texas Statutes / Codes**

TEX. CODE OF CRIM. PROC., art. 38.23 . . . . . . . . . . . . . . . . . . . . . . . . . ix, 3, 18-22, 25

TEX. PEN. CODE § 481.121(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

**Texas Rules**

Tex. R. App. Proc. 38.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Tex. R. App. Proc. 49.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Tex. R. App. Proc. 49.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**Constitutional Provisions**

U.S. CONST., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATEMENT REGARDING ORAL ARGUMENT

Because of the significance and complexity of the issues, particularly the question of a "high-crime area," as well as the difficulty encompassed in explaining the physical, positional relationship between the detaining officer and Appellant leading up to the detaining officer's detention of Appellant, the undersigned believes that oral argument would benefit the parties and Assist the Court. Appellant therefore respectfully requests the opportunity to present oral argument in this case.

## STATEMENT OF THE CASE

Appellant was convicted of possession of marihuana. Prior to trial, Appellant sought the court to grant a pretrial motion to suppress, which the trial court carried with trial. The suppression motion, and this Petition, focuses on the proper definition of a "high-crime area" and concerns whether Appellant's mere presence in a running vehicle in a high-crime area can give rise to reasonable suspicion to detain. Significantly, no court having jurisdiction over this matter has defined the term "high-crime area," so if this decision is allowed to stand, it will have far-reaching consequences that conflict with United States Supreme Court precedent.

## STATEMENT OF PROCEDURAL HISTORY

Appellant was charged by information with the offense of Possession of Marihuana, 2 to 4 ounces, a Class A Misdemeanor offense under Texas Penal Code

§ 481.121(b)(2), in Cause No. 1658777 in County Criminal Court at Law No. 1 of Harris County, Texas. Under the advice of then-counsel, Appellant pleaded guilty to the offense charged on April 19, 2010 to obtain a reduced sentence of 30 days in jail.

On the date of trial, the State was not prepared to proceed to trial, so it dismissed the offense on August 20, 2013 and *immediately refiled* this offense by information in Cause No. 1914250 on the same day, August 20, 2013.

A jury convicted Cesar Adolfo Rocha-Moreno of the offense as charged. 5 R.R. 215. The jury assessed Rocha's punishment at 270 days in the Harris County Jail. 6 R.R. 37. The Honorable Paula Goodhart, presiding judge of the County Criminal Court at Law No. 1 of Harris County, sentenced Rocha accordingly, giving 106 days credit for time served. 6 R.R. 38-39. Rocha timely filed a notice of appeal.

Appellant's appeal was dismissed in a memorandum opinion issued on October 16, 2014 by a Panel of the First Court of Appeals consisting of Justices Higley, Bland, and Sharp. Appellant's deadline for filing a motion for reconsideration *en banc* pursuant to Tex. R. App. Proc. 49.7 was October 31, 2014, as the Court of Appeals' judgment and order issued on October 16, 2014. Appellant timely filed a motion pursuant to Tex. R. App. Proc. 49.8 requesting an extension of time to file the present Motion for Reconsideration *En Banc*, which motion was granted, extending the filing deadline to November 10, 2014, on which date

Appellant filed a Motion for Reconsideration *En Banc*. On March 12, 2015, a three-judge panel of the First Court of Appeals denied Appellant's motion for rehearing *en banc*, affirmed the judgment of the trial court, but it withdrew its opinion and judgment issued October 16, 2014 and issued a published opinion and judgment in their stead. *Rocha v. State*, No. 01-13-00897-CR (Tex.App.—Houston [1st Dist.] March 12, 2015). By previous Order of this Court, the instant "Petition for Discretionary Review" is timely filed if presented to the Clerk of the Court on or before May 13, 2015.

## GROUNDS FOR REVIEW

1. The Court of Appeals erred when it affirmed the trial court's denial of Appellant's suppression motion without finding what constitutes a "high-crime area" and without remanding to determine whether Appellant was detained within a "high-crime" area.

2. Even if Appellant was detained in a high-crime area, his sitting in a running vehicle, without more, amount to mere presence in a high-crime area and does not give rise to reasonable suspicion to detain.

3. The Court of Appeals erroneously affirmed the trial court's denial of Appellant's request for an article 38.23 jury instruction regarding whether the area in which Appellant was detained was a high-crime area.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

COMES NOW Cesar Adolfo Rocha-Moreno, Appellant herein, by and through, John M. Bray and Melissa M. Oosterhof, his undersigned attorneys, and respectfully submits this Petition for Discretionary Review. In support of his request for review, Appellant would show unto the Court as follows:

**FACTS OF THE CASE**

On the evening of February 4, 2010, Appellant Cesar Adolfo Rocha-Moreno (hereinafter "Mr. Rocha"). The events in question took place in the parking lot of an apartment complex located in southwest Houston on the evening of February 4, 2010. 5 R.R. 77. The Appellant, Cesar Adolfo Rocha, was sitting in his parked vehicle, a blue Ford Expedition, waiting for his friend Brian Matthews to come greet him. 5 R.R. 77-78. Mr. Rocha was not alone, as two friends, Troy Greer and Tristan Greer, were also sitting with him in the vehicle. 5 R.R. 78; *see also* 5 R.R. 94.

Sometime around 8:30 p.m., after merely having been present for around five minutes, two men approached the vehicle—and one of them knocked on the driver's side window with his gun drawn. 5 R.R. 78-79. According to witnesses Troy Greer and Tristan Greer, all persons inside the vehicle initially thought that they were about to be robbed. *See* 5 R.R. 82; *see also* 5 R.R. 96.

One of the men who approached the vehicle was detaining officer, J.P. Cruz, a

1

Houston Police officer. 5 R.R. 97. The other man, who was described as African-American, remained unidentified. 5 R.R. 97-98. Officer Cruz was wearing a police "attack vest" that read "Houston Police," along with blue pants and a "beanie cap," due to the cold weather. 4 R.R. 29. Officer Cruz was on foot, as he had parked his vehicle in front of the apartment leasing office. 4 R.R. 34.

Officer Cruz testified that he was walking the apartment complex on foot in an effort to deter criminal activity. 4 R.R. 34. According to Officer Cruz, the area around Woodfair Drive, where the apartment complex was located, is purportedly an area known for prostitution and narcotics-related activity. 4 R.R. 34-35. The detaining officer then testified that, in his training and experience, drug dealers would enter the apartment complex in their vehicles that they would leave running, since the drug dealers "would not be there for very long." 4 R.R. 36.

After seeing that Mr. Rocha's vehicle was parked in the apartment parking lot for about five to ten minutes, the detaining officer then decided to approach Mr. Rocha's vehicle—with his gun drawn. 4 R.R. 39, 40. According to the detaining officer's direct testimony, he engaged in what he believed was a "consensual encounter"—it was not until trial that the detaining officer claimed that Mr. Rocha was suspicious due to the fact that he was in a parked, running vehicle for about five to ten minutes in what the detaining officer deemed a "high crime area." 5 R.R.

2

42-43.

On the basis that the detaining officer had reasonable suspicion due to Mr. Rocha's sitting in a parked, running vehicle in a high-crime area, the trial court denied Mr. Rocha's motion to suppress. Subsequently, prior to closing, trial counsel for Mr. Rocha requested various Article 38.23 jury instructions, including an instruction concerning whether the jury determined that the area in which Mr. Rocha was detained amounts to a high-crime area, but the trial court denied this request apparently on the basis that this factual issue was not sufficiently contested.

## ARGUMENT

I. **GROUNDS ONE AND TWO: The Court of Appeals Erred in Concluding that the Detaining Officer Had Specific, Articulable Facts to Give Rise to Reasonable Suspicion**

**A. Summary of the Argument**

Appellant would respectfully contend that the Court of Appeals did not apply the appropriate standard of review—that regarding consensual encounters—and instead applied the incorrect standard of review—reasonable suspicion to justify an investigatory detention. The detaining officer did not have reasonable suspicion to detain Appellant, because Appellant was not found in a high-crime area. However, even assuming *arguendo* that the area is one that may be characterized as high in crime, the detaining officer's investigatory detention of Appellant is still not

3

justified, because it rests on little more than his mere presence in a running vehicle while in a purportedly high-crime area. Because the Court of Appeals erred in applying the incorrect standard, it likewise erred in concluding that probable cause existed when the Appellant's unjustified detention enabled the officer to smell marijuana.

**B. Arguments and Authorities**
   **1. The Court of Appeals Erred in Applying the Standard for "Reasonable Suspicion" Instead of "Consensual Encounters"**

**Even the Officer and the Prosecution Believed the Detaining Officer Was Engaging Appellant in Consensual Encounter**

Appellant would respectfully contend that the Court of Appeals erroneously upheld the trial court's denial of Appellant's motion to suppress Appellant's unjustified detention by misconstruing the law as it applied to the facts of Appellant's case. Court of Appeals Opinion ("Ct. App. Op.") at 12. Although appellate courts give great deference to the trial court's findings of historical facts, *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), reviewing courts should only sustain the trial court's ruling if it is reasonably supported by the record. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Encounters between law enforcement and citizens are classified into three categories: (1) consensual encounter, (2) investigatory detentions, and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Under the law

of search and seizure, the reasonable suspicion standard governs the second category—"brief detentions which falls short of being fullscale searches and seizures." *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). In *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2006), the United States Supreme Court instructed that where a police officer's detention of a suspected criminal is not justified, "the individual has the right to ignore the police and go about his business." Thus, if the officer approached Mr. Rocha without reasonable suspicion or probable cause, then Mr. Rocha was free to ignore the detaining officer. *Compare id.* at 125 (regarding implications of lack of reasonable suspicion)*, with* 4 R.R. 37 (detaining officer testified he wanted to engage Rocha in a consensual encounter to find out why he and his passengers were in the vehicle)*, and* 4 R.R. 40 (detaining officer testified "I began a consensual encounter with them [Rocha and his passengers], simply asked what he was doing there.").

Clearly, the detaining officer's suspicion was no more than the "inchoate and unparticularized suspicion or 'hunch' of criminal activity" prohibited by *Terry*. *See Illinois v. Wardlow*, 528 U.S. at 123-24, *citing Terry v. Ohio*, 392 U.S. at 27. Furthermore, even the prosecution did not initially argue that the officer had reasonable suspicion, but rather that it was a consensual encounter, until they were ostensibly guided to this argument by the trial court. 5 R.R. 189.

**<u>Geographic Area Where Appellant Was Detained Was Too Broad in Scope to Comprise a "High-Crime Area" Reliably Predictive of Future Criminality</u>**

Undersigned Counsel could not find any Texas legal precedents from any courts having jurisdiction over Mr. Rocha's case that precisely define what amounts to a "high-crime area." However, where an officer testifies that an area is one of expected criminal activity based on the officer's experience, the trial court should not draw inferences about the character of the area based on the officer's "experience and expertise" unless the officer expressly so testifies. *United States v. Wright*, 582 F.3d 199, 207 (1st Cir. 2009). Indeed, Appellant would submit that it is the task of the appellate courts to eschew such illations where not properly supported, but here, the Court of Appeals did just the opposite. *See id.*

In the present case, the Court of Appeals erroneously upheld the trial court's determination that the area in question was a high-crime area, despite the fact that the area purported to be a "high-crime area" includes an impermissibly broad swath of southwest Houston. *See*, *e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540, 578 (S.D.N.Y. 2013) (observed that the term "'High-Crime Area' is also of questionable value when it encompasses a large area or an entire borough, such as Queens or Staten Island."). If this Court grants discretionary review, Appellant would urge the Court to define a "high-crime area" just as it would any other factor that may contribute to a finding of reasonable suspicion; whether an area is a "high-crime

area" should turn on whether it is so limited in geographical scope as to afford future predictive value to law enforcement. *Compare Alabama v. White*, 496 U.S. 325, 329, 332 (1990) (reasonable suspicion justified where based on anonymous tip predicting defendant's behavior that could be independently verified), *with Florida v. J.L.*, 529 U.S. 266, 270, 274 (2000) (reasonable suspicion did not exist where anonymous tip could not be suitably corroborated by indicia of reliability so as to have predictive value).

Similarly, Appellant would contend that the area described by the detaining officer—southwest Houston—comprises too expansive a geographic area too retain sufficient predictive value for the incidence of future criminality. *See* 4 R.R. 20 (officer's description of high-crime area as essentially comprising all of southwest Houston); *see also* 5 R.R. 77 (description of allegedly "high-crime area" where Rocha detained). *Compare Floyd v. City of New York*, 959 F. Supp. 2d 578 (description of geographical area as high-crime area of questionable value where it is too expansive), *with* 4 R.R. 20 (Officer J.P. Cruz testified as follows: "[T]here are a few high crime areas that you may see on the TV a lot and that's pretty much where I am at. That would include South Braeswood, Grand Park Gulf and Grandmont, Grand Parkway, Harwin. People may be familiar with that being Southwest Houston.").

**2. Even If the Area Was a High-Crime Area, Reasonable Suspicion Still Did Not Exist Because Appellant Was Merely Present in a Purportedly High-Crime Area**

**The Court of Appeals' Decision Conflicts with Texas and Federal Precedent**

The Court of Appeals' erred in concluding that Officer J.P. Cruz had reasonable suspicion to detain Mr. Rocha, since detaining officer's "specific, articulable facts" as required by *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011), consisted only of Defendant's waiting in a running vehicle for several minutes in what detaining officer deemed to be a high-crime area. *See* Ct. App. Op. at 11.

For, even assuming *arguendo* that this area was not impermissibly broad or was actually an area of expected criminal activity, this assemblage of factors is essentially no broader or more indicative of criminal activity than the Defendant's mere presence in a high-crime area—something this Court and the United States Supreme Court have explicitly prohibited. *See Illinois v. Wardlow* 528 U.S. 119, 124-25 (2006) (accused's mere presence in high-crime area insufficient to give rise to reasonable suspicion to detain); *accord Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994) (no reasonable suspicion where suspects were arguing, as mere presence in high-crime area not enough to justify detention); *Shaffer v. State*, 562 S.W.2d 853, 854 (Tex. Crim. App. 1978) (taxi driving slow in commercial lot of

8

closed businesses at night did not amount to reasonable suspicion); *Scott v. State*, 549 S.W.2d 170, 172-173 (Tex. Crim. App. 1976) (despite high-crime area, no reasonable suspicion where only other factors were awareness of thefts in nearby apartments, black males driving Cadillac at 1:30 a.m., and observation of sheeting material in car's back seat); *Klare v. State*, 76 S.W.3d 68, 77 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) (truck parked in lot of closed strip at 2:00 a.m. was not sufficient, even considering it was a high-crime area). Of course the engine of Mr. Rocha's vehicle was running—it was early February and apparently cold, as even the detaining officer was wearing a "beanie." 4 R.R. 29.

In this regard, the Court of Appeals erred in concluding that the detaining officer had reasonable suspicion based upon the officer's testimony that Mr. Rocha was in a purportedly "high-crime area" while in a mobile vehicle—in other words, there was a possibility that Mr. Rocha could have fled the scene with "effervescent evidence" that Mr. Rocha could have destroyed if not detained by the police.

However, the detaining officer conceded that effectively the *only* reason he approached Mr. Rocha's vehicle was because he was present in a running vehicle in an area "known to be high in criminal narcotic activity." 5 R.R. 41-43. Yet, the fact that criminal activity is more likely in one geographical area than another does not, by itself, satisfy the standards required for an interrogatory stop. *United States v.*

9

*Brignoni-Ponce*, 422 U.S. 873, 882, 886 (1975); *see also Brown v. Texas*, 443 U.S. 47 (1979) (same).

Indeed, United States Supreme Court precedent, which clearly prohibits such detentions, instructs that *mere presence* in an area of expected criminal activity is never enough to justify an investigatory detention, but rather, courts should consider this in the totality of the circumstances along with other factors, such as time of day or night, unprovoked flight from a uniformed police officer, unusual behavior, or a progression of these and related factors. *See*, *e.g.*, *Illinois v. Wardlow*, 528 U.S. at 124-25 (factors included unprovoked flight); *see also United States v. Soares*, 521 F.3d 117, 120-21 (1st Cir. 2008) (factors included unusual behavior); *United States v. Wright*, 582 F.3d 199, 213 (1st Cir. 2009) (progression of factors). Additionally, decisions from multiple Texas appellate courts indicate that factors even less innocuous than those present in Mr. Rocha's case do not justify detention where presence in a high-crime area is a factor. *See*, *e.g.*, *Cronin v. State*, 2005 Tex. App. LEXIS 10450, 20-21 (observing that reasonable suspicion based on presence in high-crime area amounts to speculation unless evidence shows defendant's "activities are similar in time, place, and performance" to previous crime); *State v. White*, 2014 Tex. App. LEXIS 6112, 19-20 (Tex.App.—Eastland, June 5, 2014) (mem. op.) (no reasonable suspicion where defendant turned corner in high-crime

10

area, made eye contact with officer, then nervously turned away).

**The Court of Appeals' Decision Overlooks the Absence of Important Factors Necessary to a Finding of Reasonable Suspicion to Detain Mr. Rocha**

Furthermore, the Court of Appeals committed legal error in concluding that the detaining officer recited specific, articulable facts. Ct. App. Op. at 11. According to the Court of Appeals, these factors—"the passengers and driver waited in the car for several minutes at a location where he previously had observed narcotics activity, without turning off their car engine or lights or exiting the car"—gave rise to reasonable suspicion justifying Mr. Rocha's detention. *Id.* However, where this Court has considered similar factors in concluding that reasonable suspicion existed in other cases, it was *only in combination* with other, more suspicious factors. *Amorella v. State*, 554 S.W.2d 700, 701-702 (Tex. Crim. App. 1977) (a vehicle parked in a high-crime area with its lights on and motor running, in combination with defendant's furtive movements, gave rise to reasonable suspicion).

In *Amorella*, this Court held that in addition to the aforementioned factors, the suspects exhibited a furtive demeanor—there, a suspect who was standing outside the parked vehicle closed the trunk, got in the car, and started driving away after seeing the police officer—unlike Mr. Rocha, who exhibited no such behavior. *Compare id.* at 702*, with* 5 R.R. 39-43. Moreover, the defendant in *Amorella* was detained around 1:30 a.m., whereas Mr. Rocha was detained at approximately 8:30

p.m., and indeed, the detaining officer never even mentioned the time of detention as a factor justifying Mr. Rocha's detention. 5 R.R. 39-43 (observe line of questioning in which detaining officer testified that essentially the only factors considered by officer prior to detaining Mr. Rocha were vehicle was running, lights were on, and presence in area where officer had previously observed criminal activity).

In other words, Mr. Rocha and his friends were *merely present* in a "high-crime area," even assuming that the area was one characterized by high levels of crime. *Compare id.* (defendant's mere presence in running vehicle in purportedly high-crime area as justification for detention) *with Illinois v. Wardlow*, 528 U.S. 124-25 (mere presence in high-crime area cannot *per se* give rise to reasonable suspicion to justify detention). Even with this testimony, at no point time did the detaining officer articulate that he had any belief that Mr. Rocha or the passengers in his vehicle were involved in, about to be involved in, or had been involved in any type of criminal activity prior to making contact with these individuals. 4 R.R. 37.

### 3. Because the Court of Appeals Incorrectly Concluded Reasonable Suspicion Existed, It Erroneously Concluded the Detaining Officer Had Probable Cause to Arrest Mr. Rocha

The Court of Appeals' March 12, 2015 opinion reached a conclusion inconsistent with relevant Federal and State precedent when it concluded that the detaining officer necessarily had probable cause after smelling marijuana. Ct. App.

Op. at 11-12. Specifically, the Court of Appeals based its conclusion of probable cause on the premise that the detaining officer had established reasonable suspicion to detain Mr. Rocha and his passengers and, in the Court of Appeals' view, it is thus irrelevant whether the officer smelled marijuana emanating from Mr. Rocha's car before or after Mr. Rocha exited the vehicle. Ct. App. Op. at 11-12. However, this is of crucial importance—for, if the officer did not have reasonable suspicion to detain Mr. Rocha, then he likewise could not develop probable cause to arrest Mr. Rocha, unless he smelled marijuana before detaining Mr. Rocha. *Terry v. Ohio*, 392 U.S. 1, 27, 30 (1968).

Appellant asserted and continues to assert that his detention by Officer Cruz commenced ***only after*** Officer Cruz had already approached the vehicle with flashlight in hand and weapon drawn and initiated the detention of Mr. Rocha. 5 R.R. 184. Stated otherwise, the Court of Appeals erred in that it *first* should have considered whether reasonable suspicion existed, and *then only if there was reasonable suspicion*, determine whether probable cause existed. *Terry v. Ohio*, 392 U.S. at 25. Otherwise, the Court of Appeals should have deemed the detaining officer's actions, including approaching Mr. Rocha's vehicle in an intimidating manner indicative of a show of authority, an unlawful detention not permitted by the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 446 (1991) (held

13

intimidating show of force renders encounter non-consensual).

Despite Appellant's contentions, the Court of Appeals decision depends entirely on the detaining officer's contention that he had reasonable suspicion to detain Mr. Rocha—but the officer cannot even keep his story straight. *See* 4 R.R. 36. (he develops a "reasonable suspicion" where suspicious persons will either turn their lights on or off but they will keep their engine running because they will not be there very long."). Yet, the Court of Appeals overlooked this factual inconsistency at the heart of the detaining officer's testimony. Ct. App. Op. 13-14 ("No one contested that Rocha and the passengers were waiting in the complex parking lot for several minutes with the car enginge running and the lights on . . ."). Indeed, even the Court of Appeals considers this to be "the basis for the temporary investigative detention." Ct. App. Op. 14.

**Appellant's Case Is Distinguishable From Cases Cited by Court of Appeals**

The Court of Appeals cites *Jordan v. State* for the proposition that the odor of burnt marihuana wafting out of a vehicle may give rise to probable cause to search the occupants of the vehicle and seize contraband contained therein. *See* Ct. App. Op. at 10, 12, 14 (citing *Jordan v. State*, 394 S.W.3d 58, 64 (Tex.App.—Houston [1st Dist.] 2012), which in turn cites *Parker v. State*, 206 S.W.3d 593, 597 n. 11 (Tex.Crim.App.2006)).

Appellant would respectfully contend that the Court of Appeals' reliance on *Jordan v. State* and related cases is misplaced, as it is distinguishable from the instant case in that the windows of Rocha's vehicle were *completely rolled up*, whereas the defendant in Jordan rolled down his vehicle's windows and greeted the detaining officers. *Compare Jordan*, 394 S.W.3d at 62, 63 (defendant rolled down windows voluntarily)*, with* 5 R.R. 15 (detaining officer does not "remember exactly when [Rocha] rolled [the window] down all the way"). Additionally, testimony elsewhere supports the assertion that Rocha's windows remained rolled up at all pertinent times prior to the detention. 5 R.R. 95. Likewise, *Parker* concerned a defendant whose windows were rolled down. *Parker v. State*, 206 S.W.3d at 597. *A fortiori*, the officers in *Jordan* did not even draw their weapons or activate their emergency lights, whereas the detaining officer in Mr. Rocha's case conceded that he in fact held his weapon drawn upon approaching Rocha's vehicle. *Compare Jordan*, 394 S.W.3d at 62 (no show of force by officers greeted by defendant)*, with* 5 R.R.18-19 (detaining officer admitted to drawing his weapon and holding flashlight prior to approaching Rocha's vehicle).

Furthermore, both the court of Appeals and the trial court determined that the question of whether a detention had occurred in this case is irrelevant to Fourth Amendment analysis, specifically where the detaining officer smells marijuana

15

upon approaching Rocha's vehicle. *Cf.* Ct. App. Op. at 13-14 (Court of Appeals determined that *when* officer smelled marijuana is irrelevant, as long as the officer's initial justification for detaining Mr. Rocha was justified)*, with* 5 R.R 192-93 (discussing trial court's findings).

Even the State did not attempt to argue that the detaining officer smelled the marijuana through a closed vehicle—only once the window was allegedly rolled down did the officer purportedly smell the marijuana. 5 R.R. 8, 12, 212 (testimony of officer elicited by State and State's closing argument). Yet, the only way to permit Officer Cruz to smell the marijuana outside Rocha's closed vehicle was to approach the vehicle—and the officer testified he approached Rocha's vehicle with his flashlight out and weapon drawn. 5 R.R. 18-19. Stated otherwise, the only way for Officer Cruz to have been in a physical position to smell marijuana was by initiating a detention of Rocha, and as explained hereinabove, the officer did not have a reasonable suspicion to do this. Because Mr. Rocha's case is factually and legally distinguishable from the legal precedent relied upon by the Court of Appeals, Appellant would respectfully submit that the Court of Criminal Appeals should grant discretionary review in this case.

### 4. The Correct Standard of Review Was That Governing Consensual Encounters, Because Detention Was Not Justified

Despite the Court of Appeals' conclusion that probable cause existed, it only

did so on the mistaken premise that the officer had a reasonable suspicion to detain Appellant. Instead of determining that reasonable suspicion existed, the Court of Appeals should have viewed this incident as an unjustified detention. Where the detaining officer approaches a defendant with weapon drawn and simultaneously shines a flashlight on the defendant, the police officer's actions constitute a show of authority or force that initiates a detention. *See Florida v. Bostick*, 501 U.S. 429, 446 (1991) (held visibility of officer's gun "in a recognizable weapons pouch" and use of flashlight amounts to intimidating show of force rendering encounter with defendant nonconsensual). *See also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.) (held encounter was not consensual where officers displayed weapon); *Michigan v. Chestnut*, 486 U.S. 567, 575 (1988) (display of weapon contributes to coercive environment); *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 n. 35 (Tex.Crim.App.2008) (listing numerous factors for consideration of whether a police encounter amounted to a Fourth Amendment seizure) *Hernandez v. State*, 376 S.W.3d 863 (Tex. App.—Fort Worth 2012) (appeal granted where evidence of record concerning detaining officer's spotlight position could not be found to support conviction).

Furthermore, whether an encounter was consensual turns on whether a reasonable person would feel free to walk away. *Florida v. Bostick*, 501 U.S. 429,

17

446 (1991). Whether a reasonable person would feel free to walk away is a factor for consideration but is not the *only* factor for consideration, as "it says nothing about whether or not the police conduct at issue was coercive." *Id.* Instead, the United States Supreme Court determined that a defendant's freedom of movement is merely a *clue* as to the appropriate inquiry—whether a reasonable person would feel free to decline the officer's requests and terminate his encounter with the officer. *Id.* Regardless of this, the Court of Appeals' determination that the detaining officer smelled marijuana apparently overlooks the preliminary issue of how the detaining officer came into a position to be able to smell the marijuana in the first place. Ct. App. Op. at 13.

## C. Conclusion – First and Second Grounds for Review

Appellant would submit that the Court of Appeals erred insofar as its opinion affirming the trial court's denial of Appellant's suppression motion is inconsistent with state and federal precedent. The Court of Appeals also either misinterpreted or overlooked certain key facts of Appellant's case, particularly with regards to the detaining officer's failure to properly develop reasonable suspicion. Therefore, discretionary review should be granted by this Court.

II. **GROUND THREE: The Court of Appeals Incorrectly Affirmed the Trial Court's Denial of Appellant's Request for an Article 38.23 Jury Instruction and Misconstrued Appellant's Arguments.**

## A. Summary of the Argument – Third Ground for Review

The Court of Appeals erred in affirming the trial court's denial of Appellant's requests for a jury instruction pursuant to Tex. Code Crim. Proc. art. 38.23. Because the Court of Appeals misinterpreted applicable case law, it concluded that all factual issues raised by Appellant as meriting a jury instruction were either immaterial or undisputed. This conclusion apparently rests in part on the trial court's determination that reasonable suspicion resulting denial of Appellant's motion to suppress. Nevertheless, Appellant's issues were clearly disputed and material, as the jury should have been allowed to consider and resolve factual issues in light of the perceived lawfulness of how the evidence was obtained.

## B. Argument and Authorities – Third Ground for Review

The Court of Appeals correctly states the rule from Tex. Crim. Pro. Art. 38.23—a trial court must instruct the jury to disregard unlawfully obtained evidence if a fact issue exists concerning the legality of the manner in which the police obtained the evidence. Ct. App. Op. at 12, citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). However, the Court of Appeals' analysis concerning whether a jury instruction was warranted on disputed issues of material fact is flawed in that the court had already erroneously determined that the officer had reasonable suspicion to detain Mr. Rocha on the basis that he was merely present in

a high-crime area.

This Court has previously held that a defendant is still entitled to an Article 38.23 jury instruction as long as the evidence raises a factual issue as to the lawfulness of obtaining that evidence. *Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008) (defendant still entitled to jury instruction even if he affirmatively states 'No objection' when evidence offered). "These are two distinct issues: one is a legal question of admissibility for the judge and the other is a question of disputed fact for the jury's consideration and resolution." *Id.* Consequently, the Court of Appeals also erred in concluding Mr. Rocha was not entitled to a jury instruction on whether the detaining officer had displayed his gun as a show of force, whether a reasonable person in Mr. Rocha's position would have felt free to leave, and whether the area where Mr. Rocha was detained was a high-crime area, as a jury instruction on any one of these factual issues might have caused the jury to consider and resolve this case . *Cf. Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996) ("[W]hen there are disputed issues of fact affecting the legality of [the evidence's] seizure, the question of exclusion may be tried to the jury.")*, with* Ct. App. Op. at 13 (Court of Appeals' erroneous determination that the factual issues for which Appellant sought jury instruction were either undisputed or immaterial after trial court's denial of motion to suppress).

Moreover, the Court of Appeals erred in concluding that Defendant failed to contend that the area where Defendant was detained was a high-crime area. Ct. App. Op. at 13. To the contrary, Defendant asked for an Article 38.23 jury instruction to put this very issue before the jury, but the trial court refused to do so. 5 R.R. 194. Apparently, the trial court inferred that the area was a high-crime area, due in part to the defense witnesses' testimony that they committed a crime by possessing marihuana—a crime which the detaining officer could not have perceived prior to unlawfully detaining the defendant and his friends. 5 R.R. 194. Then, when contemplating Appellant's requests for a jury instruction on these disputed issues, the trial court disregarded the possibility that a jury might find the officer acted unlawfully if, *e.g.*, the window were rolled up all the way, or if the area was not a "high-crime area" as determined by the jury. 6 R.R. 187-188, 191 (material facts disputed by Appellant were, in the eyes of the trial court, irrelevant because they "are all things that would have happened subsequent to the officer's determination of reasonable suspicion" and would "only [go] to a jury if there is a material factual dispute about the historical basis of the reasonable suspicion"). Yet, the Court of Appeals nevertheless concluded that these factual issues were either undisputed or immaterial. Ct. App. Op. at 13.

Additionally, the Court of Appeals initially determined that "no one contested

21

[the detaining officer's] testimony that he smelled marijuana as soon as he reached the car." Panel Opinion at 11. Ultimately, the Court of Appeals withdrew its earlier Panel Opinion and replaced it with a published opinion concluding that this issue of fact was "not material" because the detaining officer "could have smelled marijuana as the passengers exited the car." Ct. App. Op. at 14. However, that is not when the detaining officer purportedly smelled marijuana, and it relies on a fallacious conclusion, *i.e.*, that the detaining officer had already developed reasonable suspicion to detain Mr. Rocha and his passengers. Ct. App. Op. at 14.

On this point, Appellant would respectfully contend that the Court of Appeals misinterpreted the scope and nature of Appellant's argument with respect to Appellant's request for a jury instruction pursuant to Tex. Code Crim. Proc. art. 38.23. Both at trial and in the appellate brief, the essence of Appellant's argument is that the detaining officer ***could not*** have smelled the odor of marijuana prior to engaging Mr. Rocha and, therefore, he lacked reasonable suspicion to detain Rocha, despite the Court of Appeals' conclusion that this fact was not material. *See* Ct. App. Op. at 14; *see also* 5 R.R. 188, 197 (requesting jury instruction as to whether the window was rolled up and contending Rocha did not simply roll down window and allow detaining officer to smell marijuana). On the contrary, this factual issue *absolutely is material*, because the jury may well have acquitted Mr. Rocha if it had

22

been permitted to consider whether the officer's failure to detect marijuana prior to engaging Mr. Rocha resulted in an unlawful detention.

Specifically, Appellant argued that the detaining officer's inability to detect marijuana through olfactory senses—since the windows were ***rolled up*** on Rocha's vehicle and the doors were closed—necessarily meant that the detaining officer ***could not*** have smelled the odor of marijuana emanating from Rocha's vehicle. 5 R.R. 155, 160, 164, 174, 179, 180, 184, 188, 190, 197, 200 (emphasizing that windows were completely rolled up) (internal citations omitted). Eventually, Rocha did roll down his windows, but this was ***only after*** the detaining officer had already approached the vehicle with flashlight out and weapon drawn and initiated the encounter with Rocha. 5 R.R. 184. In contrast with the myriad evidentiary assertions adduced by Appellant that the windows were rolled up—and thus the detaining officer could not have possibly smelled the marijuana—the officer's testimony reflects his own uncertainty on the position of Rocha's windows upon the officer's approaching the vehicle, and when the windows were eventually rolled down. 5 R.R. 8 (the detaining officer testifies: "I believe at that time [Rocha's window] was kind of midway. I can't remember exactly all the way up or all the way down.").

Moreover, Appellant would submit that the trial court's failure to allow the requested jury instructions—in addition to the trial court's earlier denial of

Appellant's suppression motion—constitutes reversible error because it influenced the jury. *See Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex.Crim.App.2011) (discussing Tex. R. App. Proc. 44.2(b) and holding that appellate courts should overturn convictions where trial court's error affects defendant's substantial rights and influences the jury).

Also, Appellant would submit that no reasonable factfinder could have found that the detaining officer could have smelled marijuana where Rocha's vehicle was sealed, and where the State presented no testimonial or physical evidence of burnt marijuana. *Id.*; *see also Gallegos v. State*, 776 S.W.2d 312 (Tex.App.—Houston [1st Dist.]) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) ("The critical inquiry is whether, after viewing the evidence in the light most favorable to the judgment, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Nonetheless, this is ostensibly the only conclusion that may be drawn from the Court of Appeals' opinion on this point. Ct. App. Op. at 14.

To the contrary, the State's primary witness, detaining officer J.P. Cruz, testified that the marijuana was packaged in "25 clear, individually wrapped baggies" that were, in turn, sealed inside a "gallon-size Ziploc bag." 5 R.R. 11-12. Thus, in order to smell the marijuana, the detaining officer's olfactory senses would need to be extraordinary—he would have had to smell through at least two sealed,

24

layers of plastic and a closed vehicle.

Even the State did not attempt to argue that the detaining officer smelled the marijuana through a closed vehicle—only once the window was allegedly rolled down did the officer purportedly smell the marijuana. 5 R.R. 8, 12, 212 (testimony of officer elicited by State and State's closing argument). Thus, the Court of Appeals incorrectly upheld the trial court's improper denial of Appellant's request for an article 38.23 jury instruction as to whether Rocha's windows were rolled up. The instruction necessarily entailed the jury's consideration as to whether or not the detaining officer smelled the odor of marijuana outside of Rocha's vehicle.

Essentially, the Court of Appeals' decision ignores the Fourth Amendment's guarantee of freedom from unlawful searches and seizures. Moreover, in finding that the officer smelled marijuana, and given the true amount uncovered, the Court of Appeals infers an inexplicable conclusion—that the officer could have smelled the odor of marijuana without the officer having found any signs of marijuana consumption. Ct. App. Op. at 13, 14.

## C. Conclusion – Third Ground for Review

The factual inquiry whether Rocha's windows were rolled up subsumes the broader question of whether the detaining officer could smell marijuana emanating from Rocha's vehicle. Therefore, Appellant's request for a jury instruction on

multiple issues, including whether Rocha's windows were rolled up, prompted the broader question—whether or not the detaining officer could smell marijuana coming from Rocha's vehicle when he approached it. For, if the vehicle's windows were in fact rolled up, no reasonable jury could have found that the detaining officer acted lawfully in seizing the marijuana. Appellant would respectfully contend that the Court of Appeals misapplied the law, and therefore, this Court should grant discretionary review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Cesar Adolfo Rocha-Moreno, Appellant, prays that this Petition for Discretionary Review be granted; that this case be submitted to the Court; that the Court of Appeals' decision be reversed and for such other relief to which he shows himself entitled.

Respectfully submitted,

OOSTERHOF & BRAY, PLLC
1910 Pacific Ave., Ste. 15550
Dallas, Texas 75201
Tel: (214) 550-4664
Fax: (214) 550-4654
Email: john@oblawfirm.com

By:     /s/ John M. Bray
John M. Bray
Texas Bar No. 24081360
ATTORNEY FOR APPELLANT

26

## CERTIFICATE OF COMPLIANCE AND DELIVERY

This is to certify that: (1) this document, created using Microsoft Word, Version 14.0.7143.5000, contains 6,001 words, excluding those items permitted by Rule 9.4(i)(1) , Tex. R. App. Proc., and complies with Rules 9.4(i)(2)(B) and 9.4(i)(3), Tex. R. App. Proc.; and (2) on May 13, 2015, a true and correct copy of the above and foregoing *Petition for Discretionary Review*, as well as any and all attachments thereto, was transmitted via the eService function on the State's eFiling portal, to Alan Curry (CURRY_ALAN@dao.hctx.net), counsel for the State of Texas, and the Hon. Lisa McMinn (lisa.mcminn@spa.state.tx.us), State's Prosecuting Attorney.


  /s/ John M. Bray
John M. Bray

# APPENDIX A

Court of Appeals Decision, dated
March 12, 2015

**Opinion issued March 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-13-00897-CR**

_____

**CESAR ROCHA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1914250**

**OPINION ON REHEARING**

A jury found Rocha guilty of possession of marijuana in a useable quantity of more than two ounces and less than four ounces and assessed his punishment at 270 days' confinement. On appeal, Rocha contends that the trial court erred in (1) denying his motion to dismiss, because the State's re–filing of the case violated

his right to due process and articles 29.03 and 29.04 of the Texas Code of Criminal Procedure; (2) denying his motion to suppress pursuant to the Fourth Amendment; and (3) denying his request for a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure.  Rocha further contends that the trial court violated his right to due process by failing to maintain impartiality during the proceedings.  After a panel of our court issued its opinion in this case, Rocha moved for rehearing en banc.  The en banc court denies the motion for rehearing; however, the panel withdraws its opinion and judgment and issues this opinion and judgment in their stead.  Finding no error, we affirm.

## Background

In February 2010, Patrol Officer J. P. Cruz observed a blue Ford Expedition with tinted windows parked in an apartment complex parking lot after dark, its lights on and engine running.  The complex's leasing office had received numerous complaints regarding narcotics deals, prostitution, and trespassing taking place in this parking lot.  Officer Cruz was aware of these complaints, and he personally had observed narcotics activity in this parking lot.  He had observed individuals parked in the complex parking lot with their car engines running and headlights on before making narcotics transactions.  The Expedition remained parked for five to ten minutes.  No one entered or exited the car.  Officer Cruz observed at least three people sitting in the Expedition.

2

Officer Cruz approached the Expedition on foot with a flashlight. He approached the vehicle because no one was exiting it, and its lights and engine had been on for five to ten minutes. As a safety precaution, he also drew his handgun, but pointed it down and close to his body. Officer Cruz testified that he noticed the driver's window was partially open; as he approached it, he smelled a strong odor of marijuana emanating from the car. Officer Cruz waved to the driver, who was Rocha. In response, Rocha further rolled down his window.

Officer Cruz asked the passengers to exit the car, and he handcuffed them. Officer Cruz asked Rocha if he had marijuana in the car. Rocha confessed that he did and that it was in the car's center console. Officer Cruz discovered marijuana in the car's center console, wrapped in 25 clear, small bags. All of the small bags were further enclosed in a large, clear bag.

*Course of Proceedings*

On February 5, 2010, the State filed an information against Rocha. On April 19, 2010, Rocha pleaded guilty to possession of marijuana pursuant to a plea bargain. The trial court convicted him and assessed his punishment at thirty days' confinement. Rocha later filed a successful writ of habeas corpus pursuant to *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). The record is silent as to when Rocha filed the writ and when the writ was granted. The State proceeded

to a re–trial. The trial court reset the case on multiple occasions in 2013: on April 15, May 16, June 14, and June 24.

At the last trial setting, the State moved to dismiss the case and noted that it would re–file it. The trial court granted the State's motion. The State then filed a new information against Rocha, and the trial court set the case for trial. Rocha moved to suppress the evidence of marijuana and his statements to Officer Cruz, and at trial, the trial court held a hearing on the motion. Rocha also moved to dismiss the case, contending that the State's earlier non–suit precluded it from re–filing the same criminal charges. The trial court denied both motions.

At trial, Officer Cruz testified that based on his experience, a narcotics dealer who plans to make a sale typically will park his car in a parking lot, will leave its engine running, will remain in the car, and will occasionally leave its lights on, because the dealer plans to conduct the sale from the car and leave the parking lot as soon as the transaction is complete. Officer Cruz also testified that, as he approached the Expedition, he drew his gun for his own safety, because a narcotics dealer typically carries a weapon.

**Discussion**

**I.     Re-filed Information**

*Standard of review*

We review a trial court's decision to deny a defendant's motion to dismiss a charging instrument under a bifurcated standard.  *See State v. Krizan–Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)).  We defer to a trial court's "findings of fact that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness."  *Id.*  We review de novo "pure questions of law and mixed questions that do not depend on credibility determinations."  *Id.*

*Analysis*

Rocha contends that the State's re–filing of the case violated (1) his right to due process; and (2) articles 29.03 and 29.04 of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.04 (West 2006).  These contentions lack merit.  The Due Process Clause of the Fifth Amendment "has a limited role to play in protecting against oppressive delay" and concerns only pre–indictment delays.  *Krizan–Wilson*, 354 S.W.3d at 814 (quoting *United States v. Lovasco*, 431 U.S. 783, 789, 97 S. Ct. 2044, 2048 (1977)); *State v. Harbor*, 425 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2012, no pet.).  Here, Rocha's complaint does not concern pre–information or investigative delay;

5

rather, it concerns the State's delay during the prosecution of the case. Accordingly, the State's motion to dismiss and immediate re–filing of the case did not violate the Fifth Amendment's Due Process Clause. *See Harbor*, 425 S.W.3d at 515.

Relying on *United States ex. rel. Hetenyi v. Wilkins*, Rocha next contends that the State's re–filing of the case was fundamentally unfair, violating the Due Process Clause of the Fourteenth Amendment. 348 F.2d 844, 867 (2d Cir. 1965). *Hetenyi*, however, is distinguishable. There, the State charged the defendant with first–degree murder, but the jury found him guilty of second–degree murder. *Id.* at 847. After his conviction was vacated on appeal, the State again prosecuted the defendant for first–degree murder. *Id.* The federal appellate court held that the re–prosecution for first–degree murder violated the due process clause of the Fourteenth Amendment, because the jury refused to convict the defendant of first–degree murder in the first trial. *Id.* at 856–57. In contrast to the facts in *Hetenyi*, the State moved to dismiss this case before any trial took place, and Rocha had not been acquitted of possession of marijuana.

Rocha further contends that the State's immediate re–filing of the information violates articles 29.03 and 29.04 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.04. Article 29.03 provides that:

> A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be

fully set forth in the motion.  A continuance may be only for as long
as is necessary.

*Id.* art. 29.03.  Article 29.04 similarly provides the grounds for a State's motion to

continue the case.  *See id.* art. 29.04 (outlining requirements of State's motion for

continuance for want of a witness).  Neither provision, however, limits the State's

right to re–file a case after dismissal; both are inapplicable to the facts presented in

this case.  We hold that the trial court properly denied Rocha's motion to dismiss

the State's re–filed information.

## II.    Suppression Ruling

*Standard of review and applicable law*

We evaluate a trial court's ruling on a motion to suppress under a bifurcated

standard of review.  *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

The trial judge is the sole trier of fact and judge of the weight and credibility of the

evidence and testimony.  *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App.

2007).  Accordingly, we defer to the trial court's determination of historical facts if

the record supports them.  *Ford*, 158 S.W.3d at 493.  We review de novo the trial

court's application of the law to those facts.  *Id.*  "[T]he prevailing party is entitled

to 'the strongest legitimate view of the evidence and all reasonable inferences that

may be drawn from that evidence.'"  *State v. Castleberry*, 332 S.W.3d 460, 465

(Tex. Crim. App. 2011) (quoting *State v. Garcia–Cantu*, 253 S.W.3d 236, 241

(Tex. Crim. App. 2008)).  A trial court's ruling will be sustained if it is "reasonably

supported by the record and correct on any theory of law applicable to the case."

*Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (quoting *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

"Law enforcement and citizens engage in three distinct types of interactions: (1) consensual encounters; (2) investigatory detentions; and (3) arrests." *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991), *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S. Ct. 854, 862 (1975), and *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 1884–85 (1968)). Consensual police–citizen encounters do not implicate Fourth Amendment protections. *Id.* at 411 (citing *Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386). In contrast, if there is a detention, the detaining officer must have reasonable suspicion that the person "is, has been, or soon will be, engaged in criminal activity." *Id.* (citing *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S. Ct. 308, 310–11 (1984)). When there is a warrantless arrest, the arresting officer must have "probable cause to believe the same." *Id.* (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001)).

We consider the "totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore [a police officer's] request or terminate the interaction." *Id.* (citing *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 2405–06 (2007)).

Although we consider "[t]he surrounding circumstances, including time and place, . . . the officer's conduct is the most important factor" in deciding whether an encounter between a citizen and a police officer was consensual or a Fourth Amendment seizure. *Id.* (citing *Garcia–Cantu*, 253 S.W.3d at 244). "[W]hen an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual." *Id.* (citing *Brendlin*, 551 U.S. at 254, 127 S. Ct. at 2405). To support a reasonable suspicion that a person is, has been, or soon will be engaged in criminal activity, an officer must have "specific, articulable facts . . . combined with rational inferences from those facts." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989), *and Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)). We examine the reasonableness of a temporary investigative detention in light of the totality of the circumstances to determine whether an officer had an objectively justifiable basis for the detention. *Id.* (citing *Terry*, 392 U.S. at 21–22, 88 S. Ct. 1868, 1880, *and United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695 (1981)); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). Reasonable suspicion may exist even if the conduct of the person detained is "as consistent with innocent activity as with criminal

activity." *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011) (quoting *Curtis v. State*, 238 S.W.3d 376, 378–79 (Tex. Crim. App. 2007)).

A defendant has the "burden of producing evidence to rebut the presumption of proper conduct by law enforcement" and can satisfy it "with evidence that the seizure occurred without a warrant." *Woodard*, 341 S.W.3d at 412. "If the defendant satisfies the initial burden, the burden then shifts to the State to establish that the seizure was nevertheless reasonable under the applicable standard—either reasonable suspicion or probable cause." *Id.*

A police officer "may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996), and *California v. Carney*, 471 U.S. 386, 393, 105 S. Ct. 2066, 2070 (1985)). A strong odor of marijuana emanating from a car establishes probable cause to search the car and its occupants. *Jordan v. State*, 394 S.W.3d 58, 64–65 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006)); *see also Miller v. State*, 608 S.W.2d 684, 685–86 (Tex. Crim. App. 1980) (holding that officers were authorized to conduct pat-down search after smelling odor of marijuana emanating from car and from appellant's person); *State*

*v. Crawford*, 120 S.W.3d 508, 510 (Tex. App.—Dallas 2003, no pet.) (finding that officers had probable cause to search car after smelling odor of burned marijuana).

*Analysis*

Rocha contends that Officer Cruz violated his Fourth Amendment rights in connection with Rocha's detention and subsequent arrest.[1] The State adduced sufficient evidence, however, that Officer Cruz had specific, articulable facts supporting a reasonable suspicion that Rocha was connected with criminal activity. *See Woodard*, 341 S.W.3d at 411; *Derichsweiler*, 348 S.W.3d at 914. Officer Cruz approached the Expedition because the driver and passengers exhibited behavior consistent with that of other individuals he had observed conducting narcotics transactions in the same parking lot. Officer Cruz testified to specific, articulable facts: the passengers and driver waited in the car for several minutes at a location where he previously had observed narcotics activity, without turning off their car engine or lights or exiting the car. *See Derichsweiler*, 348 S.W.3d at 914. The circumstances, viewed in totality, support Cruz's investigative detention. *See id; Balentine*, 71 S.W.3d at 768.

The State also adduced sufficient evidence supporting probable cause to arrest Rocha. Officer Cruz smelled a strong odor of marijuana emanating from

---

[1] Rocha also contends that Officer Cruz's conduct violated his Fifth and Sixth Amendment rights. Rocha, however, provides no argument or authority in support of his contention. Accordingly, we do not address these issues. *See* TEX. R. APP. P. 38.1(i).

11

Rocha's car as soon as he approached Rocha's window. Although two of the passengers contested Officer Cruz's testimony that the window was rolled down as he approached, we defer to the trial court's determination of witness credibility where the record supports it, as it does here. *See Weide*, 214 S.W.3d at 24–25; *Ford*, 158 S.W.3d at 493. When Officer Cruz smelled an odor of marijuana, he had probable cause to search the car and its occupants. *See Jordan*, 394 S.W.3d at 64–65. We hold that the trial court did not err in denying Rocha's motion to suppress.

## III. Jury Charge

*Standard of review*

Rocha contends that the trial court erred in denying his request for a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure, because he adduced material evidence that the Officer Cruz's search was unlawful. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). If a fact issue exists concerning whether evidence was unlawfully obtained, then a trial court must instruct the jury that if it believes that the evidence was obtained in violation of article 38.23, then it should disregard the evidence so obtained. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000). The evidence (1) must raise an issue of fact; (2) must be affirmatively contested; and (3) must be material to the lawfulness of the

challenged conduct. *Madden*, 242 S.W.3d at 510. The defendant must request a jury instruction on a specific historical fact to obtain one. *Id.* at 511. "[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact . . . is not material to the ultimate admissibility of the evidence." *Id.* at 510. In other words, "[t]he disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Id.* at 511.

*Analysis*

Rocha disputes the facts surrounding his arrest, including: (1) whether Officer Cruz displayed his gun as a show of force; (2) whether a reasonable person in his position would have felt free to leave; (3) whether the apartment complex was a high–crime area; (4) whether Rocha or anyone else in the Expedition was acting suspiciously; (5) whether Rocha's window was rolled up when Officer Cruz approached the Expedition; and (6) whether Officer Cruz had reasonable suspicion.

Fact issues (1) and (2) are not material, because Officer Cruz had reasonable suspicion to detain Rocha before approaching the Expedition with his gun drawn. *See id.* at 510–11. Issues (3) and (4) are undisputed. No one contested Officer Cruz's testimony that he had viewed many narcotics transactions at the apartment complex. *See id.* at 510. No one contested that Rocha and the passengers were waiting in the Expedition in the complex parking lot for several minutes with the

13

car engine running and lights on, the basis for the temporary investigative detention.

Fact issue (5) is not material. Although both passengers testified that the windows were rolled up as Officer Cruz approached, Officer Cruz also could have smelled marijuana as the passengers exited the car, which occurred before Officer Cruz asked Rocha if he had any marijuana. Once Officer Cruz smelled marijuana, he had probable cause to search the car and its occupants. *See Jordan*, 394 S.W.3d at 64–65. The ultimate material fact is whether there was an odor of marijuana at some point, not whether the window was up or down at the initial detention. Although both passengers contested Officer Cruz's testimony that the window was open, this contested fact was not material. *See Madden*, 242 S.W.3d at 510–11. Thus, Rocha's first five challenges were either not material or not contested.

Issue (6) is not a factual issue, but a legal issue. Whether a police officer has reasonable suspicion is a question of law, not fact. *See id.* at 511 ("The jury . . . is not an expert on legal terms of art. . . . It cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law.").

Because Rocha did not raise any material fact issue, he was not entitled to an article 38.23 jury instruction. *See id.* at 510. Accordingly, the trial court did not err in denying his request for an article 38.23 jury instruction.

## IV. Impartiality of trial court

Rocha contends that the trial court violated his right to due process in failing to maintain impartiality during the proceedings. "Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial court's actions will be presumed to have been correct, absent a clear showing of bias. *Id.*

Rocha first challenges the following exchange, outside the presence of the jury, during the State's argument on Rocha's motion to suppress:

> The Court: Okay. Let's say it's not a consensual encounter. What's the reasonable suspicion to temporarily detain to confirm or dispel any suspicions about criminal activity having taken place or about to take place?
>
> State's counsel: The reasonable suspicion for the officer to approach—are you referring other than the high criminal activity in the area?
>
> The Court: Other than the high crime area.

A trial judge has broad discretion in maintaining control and expediting a trial and may interject to clarify a point of confusion. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); *Murchison v. State*, 93 S.W.3d 239, 262 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Rocha contends that the trial court went beyond those bounds and aided the State by intimating that it would find that

15

reasonable suspicion existed when the State had not previously argued this theory.[2]

This contention is without merit. The State had earlier argued that Officer Cruz

had probable cause to search the car and detain Rocha:

> State's counsel: . . . And then once he had that smell, once he had that admission, he could search the vehicle. That's that. It's very simple. There is no complicated explanation as to what happened there and whether the officer could enter the vehicle. It's very simple. He had probable cause to search the vehicle.
>
> The Court: So, your position is that a detention did not exist until after he smelled the marijuana?
>
> State's counsel: Yes.

The State argued at the outset that no search occurred until after Officer

Cruz smelled the marijuana emanating from the car. The trial court acted within its

discretion by responding with a question to clarify. *See Jasper*, 61 S.W.3d at 421.

The State clarified that its position was that no detention occurred until after

Officer Cruz smelled the marijuana. In the subsequent complained–of exchange,

the trial court did not introduce a new alternative theory and thus did not assist the

State.

Rocha also contends that the trial court violated his right to due process in

failing to hold a pre–trial hearing on his motion to suppress. But a trial court is not

---

[2] Rocha failed to object to this exchange. But, because the Court of Criminal Appeals has not spoken definitively on the issue of whether a trial judge's comments can be challenged on appeal absent an objection, we address the merits of Rocha's complaint. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006).

required to rule on a motion to suppress before trial and may carry the motion along with the trial on the merits. *York v. State*, 342 S.W.3d 528, 550–51 (Tex. Crim. App. 2011) (citing *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988)). Accordingly, we hold that Rocha failed to make a clear showing of bias and thus does not overcome the presumption that the trial court maintained its impartiality during the proceedings.

## Conclusion

The trial court did not err in denying Rocha's motion to dismiss, motion to suppress, and request for an article 38.23 jury instruction, nor did it fail to maintain impartiality during the proceedings.  We therefore affirm the judgment of the trial court.  The motion for rehearing en banc is denied.

Jane Bland
Justice

Panel consists of Justices Higley and Bland.[*]

En banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Publish.  *See* TEX. R. APP. P. 47.2(b).

---

[*] Justice Jim Sharp was a member of the original panel, which unanimously voted to affirm, but his term of office expired in the interim.  The two remaining justices issue the opinion on rehearing.  *See* TEX. R. APP. P. 41.1 & 49.3.

Print this page

# Case # PD-0407-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/13/2015 11:26:20 PM |
| Case Number | PD-0407-15 |
| Case Description | |
| Lower Court Number | |
| Assigned to Judge | |
| Attorney | John Bray |
| Firm Name | Oosterhof & Bray, PLLC |
| Filed By | Melissa Oosterhof |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Oosterhof & Bray, PLLC |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 8660381 |
| Order # | 005276750-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | Re: Cesar Adolfo Rocha-Moreno |
| Comments | Appendix A (Court of Appeals Opinion) included in Lead Document |
| Courtesy Copies | CURRY_ALAN@dao.hctx.net |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| | |
|---|---|
| Rejection | |

Envelope Details

| Reason | Time | Rejection Comment |
|---|---|---|
| Other | 05/15/2015 11:34:13 AM | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3).; counsel indicates the petition has 6001 words exceeding the limit of 4500. The petition for discretionary review does not contain the identity of Judge, Parties and Counsel in compliance with [Rule 68.4(a)]; the identity of the trial court judge is missing. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | Petition for Discretionary Review (final) - Cesar Rocha-Moreno 20150513.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Lisa McMinn lisa.mcminn@spa.state.tx.us | State Prosecuting Attorney | EServe | Sent | Yes | 05/14/2015 08:36:29 AM |