**Opinion issued July 12, 2012.**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-11-00517-CR

————————————

**COREY JAMES JORDAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Court at Law No. 2
Fort Bend County, Texas
Trial Court Case No. 10-CCR-149104

# O P I N I O N

A jury convicted appellant, Corey James Jordan, of misdemeanor possession

of marihuana,[1] and the trial court assessed punishment at 180 days' confinement,

---

[1]     *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2011).

probated for 18 months, and a $100 fine. In four related points of error, appellant contends the trial court erred in denying his motion to suppress evidence. We affirm.

## BACKGROUND

At approximately 3:21 a.m. on March 14, 2010, Deputies K. Upton and S. Lacy, both of the Fort Bend County Sheriff's Department, were parked in their respective marked patrol cars in the middle of a cul-de-sac at Cinco Park Place Drive in Fort Bend County, Texas. Their cars were facing in opposite directions with their driver's sides parallel to each other. Both deputies testified that they were finishing up paperwork and that the cul-de-sac was a usual place to conduct such activity.

Upton, who was facing towards the street entrance of the cul-de-sac, noticed a car driven by appellant and containing one passenger approach. Lacy, who was parked in the opposite direction towards the back of the cul-de-sac, also noticed appellant's car approach. Both deputies testified that appellant passed Lacy's patrol car on his right, drove to the back of the cul-de-sac, and went down a gravel path that extended beyond the paved cul-de-sac. According to Upton and Lacy, down that gravel path there were a YMCA facility and a water treatment facility, both which were closed at that time of night.

2

Appellant, according to Lacy, then drove down the gravel path toward a locked gate, stopped, backed out into the cul-de-sac, and turned around. Contemporaneously, Upton decided to swing his patrol car around so that he and Lacy were both facing the entrance of the gravel path. At that point, both marked patrol cars were facing appellant's car. Their emergency lights were not activated. Both officers testified that they were 20 to 30 feet away from appellant in the cul-de-sac, and that they were not blocking his exit from the cul-de-sac. Upton testified that, if appellant had decided to just drive around them, Upton probably would have done nothing. Lacy testified that there "was plenty of room between [his] vehicle and the outside part of this cul-de-sac, which [appellant] could have continued it around and on out down Cinco Park."

According to the testimony of both deputies, Upton, and then Lacy, got out of their cars and walked toward appellant. There was disputed testimony between the officers about whether appellant stopped his car before or after they got out of their patrol units. Both officers agreed, however, that they never told or signaled to appellant that he should stop.

Upton, followed by Lacy, walked toward appellant's car. As Upton got to within 4 to 5 feet of the car, appellant rolled down his driver's side window. Upton testified, "I didn't ask them to roll down the window. He did that on his own." He then asked, "How are you doing today? Everything all right?" Upton

3

said that he could then smell the distinct odor of burned marihuana. Upton testified that once he smelled marihuana, the encounter changed from a "check welfare" to an investigation.

Upton then walked back to his own patrol car, turned on his video/audio recording device, and then returned to appellant's car. Upton then told appellant and the passenger to get out of the car. Even though he felt that he had probable cause, Upton requested consent to search appellant's car for contraband, to which appellant agreed.

While Upton was searching the car, Lacy, who had been standing at the driver's left side quarter panel of appellant's car along with appellant and the passenger, decided to pat appellant and the passenger down for weapons and had both individuals put their hands on the hood of appellant's car. Lacy also testified that he felt he had probable cause to search appellant. During the pat-down, Lacy reached into appellant's left front pants pocket and pulled out a plastic bag containing what he believed to be marihuana, which he then tossed onto the hood of appellant's car. Upton also found marihuana in between the passenger seat and the center console of the car.

4

# MOTION TO SUPPRESS

## *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented at a suppression hearing. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor of witnesses, but we review de novo the court's application of the law to the facts. *See id.* at 25. When, as here, no findings of fact were requested or filed, an appellate court reviews the evidence in the light most favorable to the trial court's ruling and assumes the trial court made implicit findings of fact supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). "[T]he party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

In determining whether a trial court's decision on a motion to suppress is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex. Crim. App. 1984). However, this general rule is inapplicable when, as here, the suppression issue has been consensually re-litigated by the parties during trial on the merits. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

### *Detention v. Consensual Encounter?*

In his first and second points of error, appellant contends that "the initial contact between [appellant] and law enforcement was a detention unsupported by reasonable suspicion as opposed to a consensual encounter." The State argues that the police initiated a consensual encounter, which then gave rise to probable cause for arrest.

There are three different types of interactions between citizens and law enforcement officers: (1) consensual encounters; (2) investigatory detentions; and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991), *Terry v. Ohio*, 392 U.S. 1, 30–31 88 S. Ct. 1868, 1884–85 (1968), and *Gerstein v. Pugh*, 420 U.S. 103, 111–12 95 S. Ct. 854, 862 (1975)). Consensual encounters do not implicate Fourth Amendment protections. *Id.* at 411. Police officers are free to stop and request

6

information from a citizen with no justification. *Id.* And, a citizen may, at will, terminate such a consensual encounter. *Id.* A citizen's acquiescence to an officer's request does not transform a consensual encounter into a detention or seizure, even if the officer does not communicate to the citizen that the request for information may be ignored. *Id.*

Although there is no bright-line test, when determining whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction, courts consider the totality of the circumstances. *Id.* "If it was an option to ignore the request or terminate the interaction, then a Fourth Amendment seizure has not occurred." *Id.* Although we consider the surrounding circumstances, including the time and place, the officer's conduct is the most important factor in deciding whether and encounter between a citizen and the police was consensual or a Fourth Amendment seizure. *Id.*

If a police officer through force or a showing of authority restrains a citizen's liberty, the encounter is not consensual and has become either a detention or arrest, requiring either reasonable suspicion or probable cause, respectively. *Id.*

The burden is on the defendant to show that a seizure has occurred. *Id.* at 412. If the defendant meets this burden, the burden shifts to the State to show either reasonable suspicion or probable cause. *Id.*

In *Woodard*, the police had an anonymous tip about a single car accident with information that the driver of the car had been seen walking from the scene of the car wearing a black T-shirt and jeans. *Id.* at 407. Several blocks from the scene of the accident, the police saw appellant, who matched the description given, walking down the sidewalk. *Id.* Appellant was doing nothing illegal, but the officer had a "hunch" that appellant might have been the driver involved in the accident. *Id.* The officer approached appellant and asked him if he had been involved in an accident. *Id.* Appellant answered affirmatively and further acknowledged, "I'm drunk and should not have been driving." *Id.* at 408.

Woodard argued that the initial encounter between him and the police was not supported by reasonable suspicion and that all evidence derived therefrom, including his statements, should be suppressed. *Id.* The Court of Criminal Appeals disagreed, holding that the initial interaction between Woodard and the police was a consensual encounter. *Id.* at 413. The court noted that "[the officer] did not need any information about Woodard to justify the stop and inquiry," and that "[e]ven without the advance information about the accident and driver, [the officer] was free to stop, approach, and question Woodard." *Id.* The court further distinguished between a consensual "stop" and a detention requiring reasonable suspicion as follows:

> A "stop" to make an inquiry, on its own, does not show a seizure. In the absence of . . . evidence [typically associated with the seizure of a

8

person—like the display of a weapon, physical touching, or the threatening presence of several officers], otherwise offensive contact between a member of the public and police cannot, as a matter of law, amount to a seizure of that person.

*Id.* (internal citations omitted).

In a similar case, this Court considered whether an initial encounter between police and the defendant was consensual or an investigative detention. In *Johnson v. State*, No. 01-10-00134-CR, 2011 WL 5428969 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication), the arresting officer testified that he had received an anonymous tip that a person matching the defendant's description was selling narcotics from a green, four-door Mitsubishi at a nearby gas station. *Id.* at *7. The officer drove to the location described and saw a car matching that described by the tipster. *Id.* The car was legally parked and the officer did not notice any illegal activity. *Id.* The officer walked over to the car, knocked, and the driver rolled down the window. *Id.* at *1, *7. The officer noted that the defendant matched the description given by the tipster and also noted the smell of marihuana emanating from the car. *Id.* at *7. The officer obtained consent to search the car, but found nothing. *Id.* at *1–*2. He did, however, find marihuana in appellant's mouth. *Id.* at *2.

On appeal, the defendant argued that the initial encounter at the gas station was unlawful because the officer had no reasonable suspicion or probable cause to approach the car. *Id.* at *5. This Court held that the initial encounter—which

9

involved two officers approaching the car, knocking on the window, and the defendant's responding by rolling down the window—was a consensual encounter and did not require probable cause or reasonable suspicion. *Id.* at 8. The Court noted that (1) only two officers approached appellant's car; (2) they left space for appellant to drive away if he so desired; (3) the officers knocked on the window and, when appellant rolled down the window, asked him about the odor of marihuana; and (4) the officers spoke to the defendant in a polite tone and did not engage in any threatening behavior. *Id*. at *7.

In this case, Upton and Lacy both turned their patrol cars so that they were facing the dirt road from which appellant was exiting into the cul-de-sac. However, there was room for appellant to drive by them as they were 20 to 30 feet away. There is no evidence that the officers drew their weapons or activated their emergency lights. The officers got out of their patrol units and walked toward appellant. They did not order him to stop or to roll down the window. Upton testified, "I didn't ask [appellant and his passenger] to roll down the window. [Appellant] did that on his own." Once appellant rolled down the window, the officers then smelled the odor of marihuana.

We conclude that, based on this record, the trial court could have concluded that a reasonable person in appellant's position would have felt free to either stop and speak to police or drive past them into the cul-de-sac. *Compare State v.*

10

*Castleberry*, 332 S.W.3d 460, 468 (Tex. Crim. App. 2011) (determining interaction was consensual encounter when officer approached, asked for identification, inquired after defendant's purpose, and interaction took place around 3:00 a.m., but in "well-lit" area with "quite a bit" of foot traffic), *with Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) ("We . . . conclude that Griffin's act of shining his patrol car's overhead lights in the appellant's direction, coupled with his request-that-sounded-like-an-order, to 'come over here and talk to me,' caused the appellant to yield to Griffin's show of authority—a reasonable person in the appellant's shoes would not have felt free to leave or decline the officer's requests."), *and Garcia–Cantu*, 253 S.W.3d at 249 ("[G]iven the facts that Officer Okland initiated the incident by blocking appellee's exit with his patrol car, turning on his spotlight, approaching appellee's truck with a long flashlight playing over the driver's side, immediately saying 'What are you doing here?', using his flashlight to wave the passenger back to the rear of the truck, and, standing toe-to-toe with appellee, shining his flashlight into appellee's eyes, it is hard to conclude that any reasonable person would feel free to drive or walk away or to terminate the encounter."). Thus, we hold that Upton's and Lacy's interaction with appellant began as a consensual encounter and not as a detention; therefore no reasonable suspicion was required.

We overrule issues one and two.

*Probable Cause to Search Appellant's Person*

In his third issue, appellant contends that law enforcement officers lacked probable cause to search appellant's pocket. Specifically, appellant argues that because of "the odor of marijuana emanating from the vehicle, probable cause may have been present to further investigate/search the vehicle, however the search of **the occupants** of the vehicle is another matter altogether."

Appellant cites *State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002) for the proposition that to support an arrest of an individual based on the odor of marijuana alone, probable cause must be particularized to that individual. *Steelman*, however, involved a case in which the odor of marihuana was detected at a home, and the court held that the "odor of marihuana, standing alone, does not authorize a warrantless search and seizure *in a home*." *Id*. at 108 (emphasis added). "An arresting officer must have specific knowledge to believe that the person to be arrested has committed the offense." *Id.*

However, a different rule has been recognized in situations where the odor of marihuana has been detected in a confined space. As noted by the Court of Criminal Appeals in *Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006), particularized suspicion is not required when the odor of marihuana is detected inside a small, enclosed area such as a car.

> For example, suppose Officer Obie walks up the aisle of the Astrodome and smells the strong odor of burnt marihuana emanating

12

from the stands. He would be reasonable in concluding that someone in the stands has been smoking marihuana and that is a criminal offense. But that does not mean that Officer Obie has probable cause to arrest everyone in the Astrodome (or even all of those in that particular section) for possession of marihuana. Conversely, if Officer Obie makes a traffic stop and, when the driver rolls down his window, the redolent odor of burnt marihuana wafts out, he may well have probable cause to believe that the person (or persons) inside that small, enclosed area has been or is committing the offense of possession of marihuana. *See, e.g. Moulden v. State,* 576 S.W.2d 817, 818–20 (Tex. Crim. App. 1978) (police officers who stopped motorist and smelled odor of burnt marihuana coming from inside car had probable cause to search car).

*Id.* This Court has, in fact, held that "the odor of [marijuana] alone is sufficient to constitute probable cause to *search a defendant's person*, vehicle, or objects within the vehicle." *Johnson*, 2011 WL 5428969, at *9 n.10 (quoting *Small v. State*, 977 S.W.2d 771, 774 (Tex. App—Fort Worth 1998, no pet.)). *See, e.g., Hitchcock v. State,* 118 S.W.3d 844, 850–51 (Tex. App.—Texarkana 2003, pet. ref'd) (officer smelled marihuana in car, could have deduced that passengers might have concealed marihuana on their persons, and "had probable cause to believe that any evidence of drugs on Hitchcock's person could have been destroyed during the time it would have taken to obtain a search warrant"; "[n]ot only is the odor of marihuana sufficient to constitute probable cause to search a defendant's person, but also the need to preservation of evidence was considerable, and the physical intrusion experienced by Hitchcock was minimal") (citations omitted); *see also Williams v. State*, No. 03-08-00663-CR, 2010 WL 2010748 at *2 (Tex. App.—

13

Austin May 20, 2010, pet. ref'd) (mem. op. not designated for publication) (holding police could search occupants of car based on strong odor of marihuana, presence of rolling papers, and appellant's admission that he had smoked marihuana earlier); *Buquo v. State*, No. 14-04-00956-CR, 2006 WL 914623 (Tex. App.—Houston [14th Dist.] Apr. 6, 2006, pet. ref'd) (mem.op.) (noting defendant was nervous and fidgety, officer smelled strong odor of marihuana on defendant's person during weapons pat-down, and defendant admitting to being present when others were smoking marihuana recently; "[b]ecause the deputy was also faced with the possibility that appellant could destroy evidence in the time it would take to procure a search warrant, the intrusion into appellant's pockets was minimal when weighed against the importance of preserving evidence"); *Ellard v. State*, No. 03-02-00419-CR, 2003 WL 21023217 at *2–*3 (Tex. App.—Austin May 8, 2003, pet. ref'd) (mem. op., not designated for publication) (stating "odor of marihuana generally provides probable cause to search for evidence of criminal activity"; officer had probable cause to search passenger when driver of vehicle was nervous and said that defendant "probably" possessed marihuana, and when officer smelled strong odor of marihuana when he asked defendant to get out of car).

The strong odor of marihuana emanating from the car gave Upton and Lacy probable cause to search not only the vehicle, but also its passengers. Because

14

Lacy had probable cause to search appellant for drugs, regardless of Lacy's statement that he was conducting a pat-down for weapons, the trial court did not err in overruling appellant's motion to suppress. *See Walter v. State,* 28 S.W.3d 538, 542–53 (Tex. Crim. App. 2000) ("a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment" and officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

We overrule appellant's third point of error.

### *Sufficiency of the Evidence*

In his fourth point of error, appellant contends that the evidence is legally insufficient because "the marijuana found in [appellant's] vehicle by law enforcement was commingled into one unified exhibit which was improperly admitted by the court and submitted to the jury rendering its admissibility illegal as well." Specifically, appellant argues that because the marihuana from appellant's pocket (which appellant contends was illegally seized) was commingled with the marihuana from the car (which appellant does not challenge), the State cannot prove that the marihuana from the car alone was a usable amount, as required by the jury charge.

15

However, we have already held that the police had probable cause to search both appellant's car and person, thus the fact that the marihuana recovered from each location was commingled is irrelevant.

The undisputed evidence shows that 19.35 grams of marihuana was recovered from appellant's pocket and his car. Both were lawfully obtained and appellant does not challenge the State's proof on any other element. From the evidence presented, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010).

We overrule appellant's fourth point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Publish. Tex. R. App. P. 47.2(b).

16