

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESSE A. CORTEZ, | § | No. 08-23-00112-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 399th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021CR1455) |
| | § | |

## <u>MEMORANDUM OPINION</u>

A jury found Appellant Jesse A. Cortez guilty of one count of being a felon in possession of a firearm at a location other than his home after five years had passed from the date of his release from confinement on the underlying felony offense. The jury also found that a repeat offender enhancement allegation in the indictment was true and sentenced Appellant to 15 years' incarceration. In two separate issues, Appellant contends there was legally insufficient evidence to support his conviction, as the State failed to prove (1) more than five years had passed from the date of his release on the prior felony, and (2) he had actual possession of the firearm in a vehicle he was driving. In a third issue, Appellant contends the search that led to finding the firearm was

1

unlawful, and the fruits of the search should have been excluded from evidence at trial. For the reasons set forth below, we affirm.[1]

## FACTUAL BACKGROUND

At trial, David Gray, a police officer with the Union City Police Department, who then had 14 years of experience in law enforcement, testified that he was conducting a security check of Universal City Park at approximately 2:30 a.m. on August 3, 2020. He explained that the park is closed by city ordinance from 11:00 p.m. to 6:00 a.m. and that law enforcement conducts security checks in the park during the closed hours to guard against vandalism and deter individuals from using narcotics in the park. While conducting his security check that morning, he observed a car parked in the rear of the park with its lights off. When he pulled up to the vehicle, the driver turned its lights on and began to drive away. Believing the vehicle's occupants were in violation of the city ordinance, Officer Gray activated his overhead lights to do a "field contact on the occupants of the vehicle." Officer Gray recalled that the vehicle then stopped and Appellant, who had been driving the vehicle, exited from the driver's side of the car then returned to the car at his direction. The officer approached the vehicle and directed Appellant to roll down his window. When Appellant refused, Officer Gray directed him to step out of the vehicle. At that point, he detected a "strong smell" of marijuana emanating from the vehicle. Officer Gray then asked Appellant if

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

there was any marijuana in the vehicle, and Appellant said there was a "small amount that he [had] just got done smoking earlier."[2]

Officer Gray then placed both Appellant and Appellant's front-seat passenger, a 15-year-old girl, under arrest for violating the city ordinance. Officer Gray placed Appellant in his patrol car, where he read him his Miranda rights and "conducted a probable cause search of the vehicle."[3] Inside the vehicle, Officer Gray located a "pack of Cigarillos in the center console, along with a clear plastic baggy that contained a leafy substance [he] knew to be marijuana from [his] training and experience." In addition, he located a backpack on the backseat of the vehicle that had marijuana in it as well as drug paraphernalia, including a "tray that had marijuana residue commonly used when they load up the Cigarillos," a "grinder," and a "black scale."

Officer Gray testified that during the search, he also located a "Norinco AK-style" rifle and approximately three magazines and one hundred rounds of ammunition on the floorboard in the front of the vehicle "tucked between the driver's seat and the passenger seat." He further testified that the rifle was located "well within arm's reach of the driver," such that Appellant could have turned around and reached it from the driver's seat.

When the State sought to introduce the firearm into evidence, Appellant questioned Officer Gray regarding his "predicate of probable cause" for arresting Appellant for violating the after-hours city ordinance. During questioning, Officer Gray acknowledged he did not typically arrest individuals for violating the ordinance, but he has written "a lot of citations for it." Appellant then

---

[2] Appellant's attorney objected to the introduction of this statement on the ground that Appellant had not yet been read his Miranda rights, and there was "no recordation" of Appellant's statement. The trial court overruled the objection.

[3] Another officer arrived on the scene to help with the detention of Appellant's passenger.

objected to the admission of the rifle for "lack of probable cause [and] not following police policy." The trial court overruled the objection. Shortly thereafter, Appellant again objected on the ground of "lack of probable cause" when the State sought to admit the ammunition. The trial court overruled the objection, and both exhibits were entered into evidence.

The State then introduced dash cam footage from Officer Gray's patrol car, as well as his body cam footage, which captured Appellant's arrest and the search of his vehicle, including the point at which Officer Gray discovered the firearm and the ammunition in the vehicle. Officer Gray testified that the rifle in the video footage was the same rifle presented to the jury. Although Appellant stated he had "no objection" to the admission of the video footage, he did object to the admission of photographs of the rifle and bullets, again due to "lack of probable cause." The trial court again overruled the objection, and the photographs were entered into evidence.

Without objection, Officer Gray provided an additional description of the marijuana and paraphernalia found in the vehicle. However, Appellant objected on the ground of "lack of probable cause to establish the seizure of said exhibits" when the State sought to introduce photographs of the same. After the trial court overruled the objection, the photographs were admitted into evidence.

Officer Gray testified that after searching the vehicle, he ran Appellant's criminal history. Upon learning Appellant had a prior felony conviction, he believed Appellant could be charged as a felon in possession of a firearm as well as with unlawful possession of marijuana.

## PROCEDURAL BACKGROUND

Appellant was indicted on one count of being a felon in possession of a firearm at a location other than the premises at which he lived, after the fifth anniversary of his release from

4

confinement or supervision under Penal Code § 46.04(a)(2). At trial, Appellant agreed to stipulate that he had previously been convicted of the felony offense of burglary of a building with the intent to commit theft, which served as the basis of the unlawful possession offense. The State introduced a copy of the judgment in the burglary case demonstrating Appellant's conviction on May 23, 2013, and his six-month sentence in the State Jail Felony Division of TDCJ, with credit for several days served in the county jail. The judgment of conviction ordered Appellant into custody with a sentence to be "executed" as of the date of his conviction. The State also introduced a written stipulation signed by Appellant dated March 7, 2023 (the day of his trial), stating he had been convicted of the felony offense of burglary on May 13, 2013, and that "[his] release from confinement . . . was more than five years before April 1, 2019," i.e., sometime earlier than April of 2014. Appellant expressly stated he had no objection to the admission of either exhibit.

The charging indictment in Appellant's case also included a "repeat offender enhancement allegation," alleging Appellant had been convicted of the offense of sexual assault of a child in June of 2015. To support the enhancement allegation, the State presented a judgment of conviction demonstrating the sexual assault conviction on June 11, 2015, and associated four-year sentence to confinement in TDCJ.

During closing arguments, Appellant primarily argued the jury should acquit him of the offense of being a felon in possession of a firearm, as there was no evidence that he was in actual possession of the rifle. The jury rejected that defense, found him guilty as charged, and further found the enhancement allegation to be true. The jury then assessed a punishment of 15 years'

incarceration.[4] This appeal followed.

## ISSUES ON APPEAL

In Issue One, Appellant contends the State's evidence was legally insufficient to support his conviction, arguing the State failed to prove he was in possession of a firearm more than five years after he was released from confinement on the burglary offense. In Issue Three, which we take out of order, Appellant contends the State's evidence was legally insufficient to support his conviction because there was no evidence he was in actual possession of the firearm. And in Issue Two, Appellant contends the search of his vehicle that led to the discovery of the firearm was unlawful such that the fruits of the search should have been excluded from evidence.

## SUFFICIENCY OF THE EVIDENCE

We first examine the sufficiency of the evidence to support his conviction.

### A. Standard of Review

In determining whether the State presented sufficient evidence at trial to support a conviction, we must first determine the "the essential elements of the crime" for which the State must present evidence. *See Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023) (citing *Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011)). To identify the essential elements, we examine "the hypothetically correct jury charge for the case." *Id.* (citing *Clinton*, 354 S.W.3d at 799; *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The Supreme Court has set forth a non-exhaustive list of factors involved in determining a hypothetically correct jury charge, providing that such a charge "(1) accurately sets out the law, (2) is authorized by the indictment,

---

[4] During the punishment phase of the trial, various witnesses testified to Appellant's ongoing mental health issues.

(3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried." *Id*. (citing *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013); *Malik*, 953 S.W.2d at 240). "The law as authorized by the indictment includes 'the statutory elements of the offense . . . as modified by the charging instrument.'" *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

Second, under the standard set forth by the United States Supreme Court in *Jackson v. Virginia*, we examine "all of the evidence in the record in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (holding that the *Jackson* standard "is the only standard that a reviewing court should apply" when determining whether the evidence is sufficient to support a criminal conviction). In applying this standard, we keep in mind that the jury is the sole judge of the credibility and weight to be given to the evidence, and that the jury is free to draw all reasonable inferences from the evidence. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)). If the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that resolution. *Id.*; *see also Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). In other words, we do not reevaluate the weight and credibility of the evidence in the record or substitute our own judgment for that of the factfinder. *Braughton*, 569 S.W.3d at 608 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (recognizing that an appellate court does not sit as a "thirteenth juror" when reviewing challenges to the

7

sufficiency of the evidence)). Therefore, the jury's verdict "must stand unless it is found to be irrational or unsupported." *Dunham*, 666 S.W.3d at 482 (citing *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991)); *see also Braughton*, 569 S.W.3d at 608 (recognizing that juries are not permitted to come to conclusions based on "mere speculation or factually unsupported inferences or presumptions") (quoting *Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007)).

In conducting our review, we note that circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to sustain a conviction. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex. Crim. App. 2013). Therefore, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Dunham*, 666 S.W.3d at 482.

**B.  The State established the timing of Appellant's release from confinement**

In Issue One, Appellant contends the State failed to establish he was in possession of a firearm after the fifth anniversary of his release from prison on the prior burglary offense, which he contends is an essential element of the offense.[5] Although we agree this is an essential element of the offense, we find the evidence sufficient to support a finding that the element was met.

Section 46.04 of the Texas Penal Code provides that "[a] person who has been convicted of a felony commits an offense if he possesses a firearm" in one of two situations. TEX. PEN. CODE

---

[5] Appellant does not deny that the firearm was discovered at a location other than where he lived. And as Officer Gray testified without contradiction at trial, Appellant did not live at the park, where Appellant was when the firearm was found.

ANN. § 46.04(a)(1) and (2). First, subsection (1) provides it is an offense if an individual "possesses a firearm . . . after conviction and *before* the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." *Id*. at § 46.04 (a)(1). Second, subsection (2) provides a person commits an offense "after the period described by Subsection (1), at any location other than the premises at which the person lives." *Id*. at § 46.04 (a)(2). Here, the indictment charged Appellant with committing the offense under subsection (2), alleging he possessed a firearm "at a location other than the premises at which he lived" after the fifth anniversary of his release from confinement following his conviction for the felony offense of burglary. And the jury was similarly instructed that it could only find Appellant guilty of the offense if it found he was found in possession of the firearm five years after his release from confinement for his conviction for burglary.[6]

Appellant correctly points out that when, as here, a statute "defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, 'the law' for purposes of the hypothetically correct charge[ ] is the single method alleged in the indictment." *Clinton*, 354 S.W.3d at 799 (Tex. Crim. App. 2011) (quoting *Gollihar v. State*, 46

---

[6] The jury was instructed as follows: "Our law provides that a person who has been convicted of a felony commits the offense of unlawful possession of a firearm if he possesses a firearm after the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, at any location other than the premises at which the person lives." In the application portion of the jury charge, the court instructed the jury as follows: "Now, if you find from the evidence beyond a reasonable doubt that on or about the 3rd Day of August 2020, in Bexar County, Texas, [Appellant] having been convicted of the felony offense of burglary of a building on the 13th day of May 2013 . . . did intentionally or knowingly possess a firearm after the fifth anniversary of [his] release from confinement or release from supervision under community supervision, parole, or mandatory supervision, following conviction of said felony, at a location other than the premises at which [Appellant] lived, to-wit: in a vehicle parked in a public place, [t]hen you will find [Appellant] guilty of the offense of unlawful possession of a firearm, as charged in the indictment."

S.W.3d 243, 254 (Tex. Crim. App. 2001)); *see also Herron v. State*, 625 S.W.3d 144, 158–59 (Tex. Crim. App. 2021) (recognizing that a defendant may only be convicted of committing an offense in the manner alleged in the indictment and to "hold otherwise would permit a material variance from the allegations in the charging instrument"). Thus, the State was required to present evidence to support the manner in which Appellant was charged under the indictment, i.e., of being in possession of a firearm five years after his release from confinement on the burglary charge at a location other than where he lived. *See Fagan v. State*, 362 S.W.3d 796, 799–800 (Tex. App.— Texarkana 2012, pet. ref'd) (recognizing that § 46.04 contains "two ways by which a person . . . can be held criminally responsible for unlawfully possessing a firearm," and the State is confined to determine whether the State presented legally sufficient evidence to sustain a conviction under the method charged in the indictment).

Appellant contends the State only presented evidence of the burglary conviction in May of 2013 but did not provide evidence of when he was released from confinement on that offense. As set forth above, we agree with Appellant that under these circumstances the date of his release was an essential element of the charged offense, and the State was required to present evidence to support a finding on that element. *See Fagan*, 362 S.W.3d at 799–800 (where defendant was found in possession of a firearm during a time outside the minimum period of confinement for the underlying felony, it was "necessary for the State to prove the date of [his] release from confinement or supervision") (citing *Wright v. State*, Nos. 05-08-00778-CR, 05-08-00779-CR, 05-08-00780-CR, 2009 WL 1887127, at **8–9 (Tex. App.—Dallas July 2, 2009, pet. ref'd) (mem. op., not designated for publication) (recognizing that § 46.04 contains a "timing element and required some proof of when the offense of possession of a firearm by a felon occurred in relation

10

to the prior conviction")); *see also Tapps v. State*, 257 S.W.3d 438, 444–45 (Tex. App.—Austin 2008), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009) (recognizing that timing is an essential element of the offense of being a felon in possession of a firearm).

However, we conclude that the record contains evidence from which the jury could have reasonably inferred that Appellant was found in possession of the firearm more than five years after his release from confinement on the burglary offense. As the State points out, it presented evidence of a judgment of conviction reflecting Appellant was convicted of the burglary offense on May 13, 2013, and was sentenced to a six-month prison term. The State correctly points out that, given his six-month sentence, the jury could have drawn a reasonable inference that Appellant was released from confinement more than five years after he was found in possession of a firearm in August of 2020. *See generally Witcher v. State*, 638 S.W.3d 707, 710 (Tex. Crim. App. 2022) (recognizing that a jury may determine when an event occurred based on rational interferences drawn from the evidence).

More importantly, the jury was presented with a written stipulation signed by Appellant stating: "I . . . do hereby judicially confess and stipulate, by agreement, that I was convicted of the felony offense of BURGLARY BUILDING on the 13th day of MAY . . . 2013 [and] was sentenced to six months in state jail felony on May 13, 2013 and *my release from confinement, parole or mandatory supervision was more than five years before April 1, 2019*." (emphasis added). In other words, Appellant stipulated that he was released from confinement on the burglary conviction on or before April 1, 2014. And because the State alleged in the indictment that Appellant committed the offense of being a felon in possession of a firearm in August of 2020, this served as sufficient

11

evidence to establish that the alleged offense occurred more than five years after his release from confinement.

Appellant's Issue One is overruled.

**C. The State established that Appellant was in possession of a firearm**

In Issue Three, Appellant contends the State failed to present evidence of another essential element of the charged offense, i.e., that he was in actual possession of the firearm found in his vehicle. Although we once again agree with Appellant that this was an essential element of the offense, we conclude the State presented sufficient evidence of this element.

Section 46.04(a)(2) of the Texas Penal Code required the State to establish that Appellant was in possession of the firearm found in the vehicle he was driving. TEX. PENAL CODE § 46.04(a)(2). In turn, the Penal Code defines "possession" to mean "actual care, custody, control, or management." TEX. PEN. CODE ANN. § 1.07 (39). In addition, § 6.01 provides that a person "commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession," and further that "[p]ossession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PEN. CODE ANN. § 6.01(a), (b).

In determining whether an individual is in possession of contraband, the Texas Court of Criminal Appeals has held that a defendant's "mere presence" at the location where contraband is found—when it is not in the individual's exclusive possession—is "insufficient to establish possession." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *see also Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.) (recognizing that the "mere presence of the accused at the location where contraband is found is not sufficient, in and of itself,

to establish his knowing possession"). However, "a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate*, 500 S.W.3d at 413. But to protect innocent bystanders from conviction merely because of "fortuitous proximity" to someone else's contraband, the court has developed the "affirmative links" test, which considers various factors that may indicate "a link connecting the defendant to the knowing possession of contraband." *Id* at 414 (citing *Evans v. State*, 202 S.W.3d 158, 162 n. 12). The court's non-exclusive list of factors that may "link" a defendant to contraband includes the following:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n. 12). It is appropriate to apply the "affirmative-links" analysis used to determine whether a defendant was in possession of contraband when analyzing whether a defendant was in possession of a firearm. *See Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.) ("In cases involving unlawful possession of a firearm by a felon, we analyze the sufficiency of the evidence under the rules adopted for determining the sufficiency of the evidence in cases of unlawful possession of a controlled substance."); *see also McBeth v. State*, No. 03-22-00026-CR, 2022 WL 3638208, at *2–3 (Tex.

13

App.—Austin Aug. 24, 2022, no pet.) (mem. op., not designated for publication) (applying "affirmative links" analysis in determining whether the evidence was sufficient to support a conviction for unlawful possession of a firearm by a felon); *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (same). Of course, at least some of the factors listed in *Evans* and *Tate* linking a defendant to contraband will not be relevant in a firearms case, and in some instances, we replace the reference to the "contraband" or "narcotics" with a reference to the term "firearm." *See Lacy v. State*, No. 05-21-00090-CR, 2022 WL 17261161, at *3, n. 1 (Tex. App.—Dallas Nov. 29, 2022, no pet.) (mem. op., not designated for publication) (recognizing that some of the factors delineated in contraband cases will not be relevant to an analysis of whether an individual was in possession of a firearm) (citing *Williams v. State*, No. 05-19-00428-CR, 2020 WL 2059916, at *6 (Tex. App.—Dallas Apr. 29, 2020, no pet.) (mem. op., not designated for publication) (omitting factors 1, 4, 5, 9, 10, and 14 and replacing "narcotics" with "weapons").

The Court of Criminal Appeals has held that it is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see also Barbosa*, 537 S.W.3d at 645 (recognizing same); *Lacy*, 2022 WL 17261161, at *3 (recognizing that there is "no set formula to determine what links are sufficient, and the number of links present is not as important as the 'logical force' or degree to which the factors, alone or in combination, tend to link the accused to the firearm.") (citing *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.—Dallas 1994, pet. ref'd)). And although the court has held that these factors may "help guide a court's analysis" in determining whether a defendant was properly convicted of a possession offense, it has cautioned that "ultimately the inquiry remains that set forth in *Jackson*,"

14

and the true question is whether, "[b]ased on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

Applying the affirmative-links analysis modified for firearms, and keeping in mind the standard set forth in *Jackson*, we conclude there was legally sufficient evidence from which a jury could have rationally inferred that Appellant was in possession of the firearm found in the vehicle he was driving at the time of his arrest. First and foremost, Officer Gray testified that he found the firearm in the vehicle Appellant was driving and that it was within Appellant's reach, between the driver's seat and the passenger seat. The officer's bodycam footage confirmed as much. We find this to be a significant factor in support of the jury's verdict. *See Hawkins*, 89 S.W.3d at 677 (finding it significant that gun was found "within easy reach" of the defendant in determining the evidence was sufficient to convict him of being a felon in possession of a firearm); *Boyd v. State*, 2018 WL 1278718, at *1–2 (Tex. App.—Austin March 13, 2018,) (mem. op., not designated for publication) (finding it significant that appellant was driving vehicle in which firearm was found and that the driver could have "easily reach[ed]" the firearm where it was located). And although Appellant points out there was no evidence indicating he owned the vehicle where the firearm was found, ownership is not dispositive of the possession issue.

We also find significant that Appellant's conduct demonstrated consciousness of guilt, as he initially attempted to leave the park when he first saw Officer Gray's patrol car approaching, and he then refused to roll down his window when directed to do so by the officer. *See Boyd*, 2018 WL 1278718, at *2 (finding consciousness of guilt where appellant "got out of the vehicle in a suspicious manner and began walking quickly away"). Finally, Appellant's admission to Officer

15

Gray that there was a "small amount" of marijuana in the car is also significant. The jury could have reasonably inferred that if Appellant was aware of marijuana in the car, he would have been aware of the firearm as well. *See McBeth*, 2022 WL 3638208, at *2–3 (concluding that where appellant admitted to being aware of the presence of marijuana inside vehicle, which was in close proximity to pistols, the jury could have reasonably concluded that he was also aware of the presence of the pistols).

Accordingly, based on the combined and cumulative force of the evidence, and deferring to the jury's right to make any reasonable inferences therefrom, we conclude the evidence is sufficient to support the jury's finding beyond a reasonable doubt that Appellant intentionally or knowingly possessed the firearm in the vehicle he was driving.

Appellant's Issue Three is overruled.

### FAILURE TO EXCLUDE EVIDENCE OF THE FIREARM

In Issue Two, Appellant contends the evidence obtained during the vehicle search, "including marijuana, the firearm, and ammunition, were excludable due to an improper search of the vehicle and seizure of the Appellant's person, vehicle, and effects." Appellant contends the search was improper as there was (1) no reasonable suspicion to stop his vehicle for a city ordinance violation, (2) no probable cause to arrest him for violating the ordinance,[7] and (3) no

---

[7] Although the question of whether Appellant was properly arrested is not germane to the question of whether Officer Gray had probable cause to search Appellant's vehicle, we note that, contrary to Appellant's contention, Article 14.06(b) of the Code of Criminal Procedure gives an officer the discretion to issue a citation to a person charged with Class C offense (which Appellant contends the City Ordinance was) or take the person before a magistrate. *See* TEX. CODE CRIM. PROC. ANN. art. 14.06(b) ("A peace officer who is charging a person . . . with committing an offense that is a Class C misdemeanor . . . may, instead of taking the person before a magistrate, issue a citation to the person"); *see also State v. Astorga*, 642 S.W.3d 69, 81–82 (Tex. App.—El Paso 2021, pet. ref'd) (recognizing that under Article 14.06(b), an officer has the discretion to either issue a citation for a Class C misdemeanor offense or make a custodial arrest and take the suspect before a magistrate).

16

probable cause to search his vehicle. The State contends Appellant waived his right to raise this issue by failing to make a timely objection to admission of the evidence. Further, the State argues that even if the issue was preserved, it lacks merit, as Officer Gray had reasonable suspicion to stop Appellant's vehicle as well as probable cause to arrest him and to search the vehicle. We agree with the State.

### A. Failure to preserve error

#### (1) Applicable law

To preserve error on appeal, a complaint must be made in the trial court "by a *timely* request, objection or motion." *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000) (en banc) (citing TEX. R. APP. P. 33.1); *see also Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (to preserve error, there must be a timely and specific objection to the complained-of evidence). To be timely, a party must object either before the evidence is admitted, or, if not possible, object "as soon as the objectionable nature of the evidence [becomes] apparent and [move] to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (en banc); *see also Daniel v. State*, No. 04-16-00576-CR, 2018 WL 2694665, at *2 (Tex. App.—San Antonio June 6, 2018, pet. ref'd) (mem. op., not designated for publication) (recognizing same).

Failing to object either before or at the time evidence is admitted, without a showing of a legitimate reason to justify the delay, waives the claim of error. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc); *see also Aguilar*, 26 S.W.3d at 906 (recognizing that error

is waived unless the objection is "made as soon as the grounds of objection become apparent" or alternatively show a "reason for delaying his objection"); *Hernandez v. State*, No. 08-98-00016-CR, 2001 WL 9929, at *2 (Tex. App.—El Paso Jan. 4, 2001, pet. ref'd) (not designated for publication) (citing *Lagrone v. State*, 942 S.W.2d 602, 617-18 (Tex. Crim. App. 1997) ("For an objection to be timely, it must be made as soon as the ground for objection has become apparent; if the defendant fails to object until after an objectionable question has been asked and answered, and unless the defendant can show a legitimate reason to justify the delay, the objection is not timely and any error has been waived.")).

In addition, a party must object each time the allegedly inadmissible evidence is offered at trial or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (citing *Ethington*, 819 S.W.3d at 858). Therefore, any "error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id.* Stated otherwise, "overruling an objection to [the admission of] evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc) (recognizing it is "well settled in this state that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to"); *see also Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023) (recognizing same). Thus, "[a] defendant may not complain on appeal about evidence admitted elsewhere without objection." *See Nieto v. State*, No. 04-97-00866-CR, 1999 WL 734800, at *3 (Tex. App.—San Antonio Sept. 22, 1999, no pet.) (citing *Roy v. State*, 891 S.W.2d 315, 325 (Tex. App.—Fort Worth 1994, no pet.).

### (2) Analysis

Appellant did not file a motion to suppress, thus there was no pretrial hearing on the admissibility of any of the evidence found in the vehicle. Accordingly, Appellant was required to make a timely objection to the admission of the evidence at trial at the earliest opportunity. *See Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984) (en banc) (when no pretrial hearing is held, the defendant must object when the evidence is offered at trial to preserve error on appeal); *see also Norris v. State*, No. 04-18-00447-CR, 2019 WL 2271955, at *2 (Tex. App.—San Antonio May 29, 2019, pet. ref'd) (mem. op., not designated for publication) (recognizing that defendant must make a timely objection at trial if he does not obtain a ruling on a pretrial motion to suppress).

As the State points out, however, Appellant, failed to object to Officer Gray's testimony when he was describing the evidence he found in the vehicle, including the rifle, ammunition, and marijuana, and instead allowed officer to testify at length regarding his findings. Appellant waited until the State sought to introduce the rifle and the ammunition into evidence to raise an objection regarding the lack of "probable cause." Texas courts have repeatedly held that an objection to the introduction of physical evidence made *after* a witness testifies without defense objection regarding the evidence preserves no error for appellate review. *See Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980) (where officer testified, without objection, about finding narcotics in a location described by appellant during an oral confession, any objection to the admission of the narcotics themselves at trial was not timely made and therefore nothing was presented for review); *see also Johnson v. State*, No. 04-05-00214-CR, 2006 WL 704474, at *3 (Tex. App.—San Antonio Mar. 22, 2006, no pet.) (mem. op., not designated for publication) (where officer testified at trial regarding events that occurred during a traffic stop and defendant

19

did not object until after the State offered the video of the stop into evidence, objection was not timely and defendant failed to preserve the error); *Tilford v. State*, No. 08-09-00154-CR, 2011 WL 3273543, at \*11 (Tex. App.—El Paso July 29, 2011, pet. ref'd) (not designated for publication) (by failing to object to detective's testimony about the search and its result, appellant's subsequent objection to the introduction of the state's exhibits pertaining to the search was untimely); *Turner v. State*, 642 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1982, no pet.) ("Error has also been held waived in situations, such as here, where there was no objection regarding the *testimony* preceding the admission of the exhibits."); *Ricks v. State*, No. 03-16-00304-CR, 2018 WL 1514536, at \*1 (Tex. App.—Austin Mar. 28, 2018, no pet.) (mem. op., not designated for publication) (error in admitting evidence of allegedly illegal search was not preserved where defense counsel only objected to the admission of the evidence when it was offered as an exhibit but allowed the arresting officer to testify at trial about his search that led to the discovery of the marijuana).

Here, Appellant not only failed to object to Officer Gray's testimony regarding the result of his search prior to the admission of the exhibits, but he stated he had no objection to the introduction of Officer Gray's bodycam footage, which recorded the search and the moment at which the rifle and ammunition were found. As set forth above, a party must object every time allegedly inadmissible evidence is offered or lodge a running objection to the admission of the evidence, neither of which Appellant did. *Valle*, 109 S.W.3d at 509. Therefore, the admission of the evidence a second time—this time with an express statement that Appellant had no objection to its admission—served to waive error. *Id*. at 509–10 (error was waived where appellant failed to object when witness testified the second time that he was fearful for his life); *see also Holmes v.*

*State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008) ("A defendant who affirmatively states, 'No objection,' when evidence is offered, waives his right to complain on appeal that the evidence was, as a matter of law, illegally obtained."); *see also Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) (en banc) (when a defendant affirmatively asserts during trial he has "no objection" to the admission of the complained–of evidence, he waives any error in its admission); *see generally Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) (recognizing that a defendant is estopped from raising issue on appeal when he affirmatively declines to raise an issue in the trial court).

Accordingly, we conclude that Appellant failed to preserve error regarding the admission of the complained-of evidence.

### B. No error in admitting the evidence

Even if we were to find error was preserved, we agree with the State that Officer Gray had reasonable suspicion to conduct a traffic stop of Appellant's vehicle for violating the after-hours city ordinance as well as probable cause to arrest him and search his vehicle.

As set forth above, Officer Gray testified at trial without contradiction that the city ordinance for which he arrested Appellant provided that Universal City park was closed from 11:00 p.m. to 6:00 a.m. Appellant contends he did not violate the ordinance, as the ordinance only prohibits an individual from remaining in the park after hours, and he was attempting to leave the park when Officer Gray observed him. According to Appellant, he was simply trying to comply with the ordinance by leaving the park, and he therefore contends Officer Gray lacked reasonable suspicion to believe he violated the ordinance. We note, however, that Officer Gray presented unrebutted testimony that he observed Appellant's vehicle parked with its lights off at 2:30 a.m.,

21

at a time when the park was clearly closed, and that the vehicle did not begin to move until Officer Gray approached it. Accordingly, Officer Gray had reasonable suspicion to believe that Appellant was in violation of the city ordinance when he initially observed him and therefore lawfully conducted the stop.

And Officer Gray provided unrebutted testimony that once he properly stopped Appellant's vehicle, he detected the smell of marijuana emanating from the vehicle, and Appellant admitted to him that he had just finished smoking marijuana shortly before the stop. Although the odor of marijuana may not be sufficient to conduct a warrantless search of a home, the Court of Criminal Appeals recognizes a different rule applies when the odor of marijuana has been detected in a confined space, such as a car. *See Parker v. State*, 206 S.W.3d 593, 597 n. 11 (Tex. Crim. App. 2006) (recognizing if an officer makes a lawful traffic stop and "when the driver rolls down his window, the redolent odor of burnt marihuana wafts out, he may well have probable cause to believe that the person (or persons) inside that small, enclosed area has been or is committing the offense of possession of marihuana") (citing *Moulden v. State*, 576 S.W.2d 817, 818–20 (Tex. Crim. App. 1978) (police officers who stopped motorist and smelled odor of burnt marijuana coming from inside car had probable cause to search car)); *see also Jordan v. State*, 394 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (chronicling cases in which courts have held that the odor of marijuana emanating from a vehicle is sufficient to constitute probable cause to conduct a warrantless search of a defendant's person or vehicle). Here, Officer Gray not only detected the smell of marijuana emanating from the vehicle Appellant had been driving but was told by Appellant himself that he had been smoking marijuana shortly before. As well, Appellant displayed nervous behavior by immediately exiting the car when he was pulled over and by later

22

refusing to roll down his window. We find these factors sufficient to support a finding of probable cause to justify the search. *See Williams v. State*, No. 03-08-00663-CR, 2010 WL 2010748 at *2 (Tex. App.—Austin May 20, 2010, pet. ref'd) (mem. op. not designated for publication) (holding police had probable cause to search occupants of car and the car itself based on strong odor of marijuana, presence of rolling papers, and appellant's admission that he had smoked marihuana earlier).

Appellant's Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


LISA J. SOTO, Justice


September 22, 2023

Before Rodriguez, C.J., Palafox, Soto, JJ.

(Do Not Publish)

23